# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-291

CHARLES JONES, APPELLANT,

v.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    August 26, 2004   )

*Ronald L. Smith* and *J. Marc Burgess* (non-attorney practitioner), both of Washington, D.C., were on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Acting Assistant General Counsel; *Brian B. Rippel*, Acting Deputy Assistant General Counsel; and *Debra L. Bernal*, all of Washington, D.C., were on the brief for the appellee.

Before KRAMER, *Chief Judge*, and IVERS and STEINBERG, *Judges*.

KRAMER, *Chief Judge*:  The appellant, through counsel, appeals an October 16, 2000, Board of Veterans' Appeals (Board or BVA) decision in which the Board denied claims for an increased rating, in excess of 30%, for his service-connected sarcoidosis; an increased rating, in excess of 20%, for residuals of a gunshot wound (GSW) of the right chest, involving pleurisy, fibrosis, and injury to Muscle Group (MG) XXI (thoracic muscles); and an increased rating, in excess of 10%, for residuals of a GSW of the right chest, involving injury to MG I (extrinsic muscles of shoulder girdle, including trapezius, levator scapulae, and serratus magnus (also called serratus anterior) muscles).  Record (R.) at 4, 12-23; *see* 38 C.F.R. § 4.73 (2003), Diagnostic Code (DC) 5301 (identifying muscles contained in MG I), DC 5321 (identifying muscles contained in MG XXI); http://www.bartleby.com/107/122.html (last visited July 26, 2004).  The Board also denied an extraschedular rating for the appellant's service-connected disabilities.  R. at 22.  The parties each

filed a brief, and the appellant filed a reply. Because the appellant, through counsel, has not addressed on appeal his increased-rating claims for sarcoidosis and residuals of a GSW of the right chest involving injury to MG XXI, any appeal with respect to those claims is deemed abandoned and, accordingly, the Court will not review the BVA decision with respect to them. *See Ford v. Gober*, 10 Vet.App. 531, 535 (1997); *Grivois v. Brown*, 6 Vet.App. 136, 138 (1994) (issues or claims not argued on appeal are deemed abandoned); *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993). This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will vacate in part and set aside in part the Board's decision, and the Court will remand two of the matters for readjudication consistent with this opinion.

## I. FACTS

The appellant served on active duty from December 1962 to January 1966 and from November 1977 to March 1981. R. at 26-27, 29-30. On October 16, 1965, the appellant received a GSW that perforated the right anterior chest cavity and also caused a hemopneumothorax. R. at 38, 47-48, 53-54. (A pneumothorax is "an accumulation of air or gas in the pleural space, which may occur spontaneously or as a result of trauma or a pathological process, or be introduced deliberately," and a hemopneumothorax is a "pneumothorax with hemorrhagic effusion." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 750, 1318 (28th ed. 1994) [hereinafter DORLAND'S].) That day, he "underwent a thoracotomy with the placing of chest tubes." R. at 48, 54. Eight days after the appellant sustained the GSW, an examiner noted that the appellant had, inter alia, (1) a right thoracotomy scar; (2) a one-centimeter punctate wound in the anterior chest representing the point of entry of the missile; and (3) a corresponding one-and-one-half-centimeter by two-centimeter superficial wound inferior to the angle of the right scapula representing the point of exit of the missile. R. at 48. (A punctate wound or scar is characterized as "resembling or marked with points or dots." DORLAND'S at 1389.)

In January 1966, the appellant was discharged from service as a result of his GSW and, subsequently, he filed a claim for disability compensation or pension. R. at 26, 98. In a March 1966 VA chest examination report, the examiner noted that the appellant had a "[h]ealed thoracotomy scar on the right, and small healed scars just to [the] right of [the] sternum . . . [and the s]cars [were] not

2

depressed or adherent and [were] not tender." R. at 90. In another examination report completed that month, the same examiner described the appellant's scars as follows: (1) A fourteen-inch thoracotomy scar that is "slightly hypertrophic–still tender to touch in lower medial half"; (2) a "[one-quarter by one-quarter-inch] hypertrophic scar on [anterior right] chest at level [of] nipple but [two-and-one-half inches] medial to [the nipple] from entry wound of bullet–[well-healed and non-tender]"; and (3) a [two-and-one-half-inch by one-half-inch] scar medial to thoracotomy scar in back at mid[-]scapular level–. . . [well-healed,] slightly tender, [and] slightly hypertrophic (exit wound of bullet)." R. at 95-96. That examiner opined that the appellant's "original wound penetrated the pectoral muscles[,] . . . intercostal[] anteriorly [and] . . . serratus anterior muscles[, intercostal] posteriorly." R. at 95. (The term "intercostal" means "situated between the ribs." DORLAND'S at 848.)

A VA regional office (RO), in May 1966, awarded the appellant service connection for, inter alia, residuals of a GSW to the chest, involving injury to MGs I and II (extrinsic muscles of the shoulder girdle including the pectoralis, rhomboid, and latissimus dorsi muscles) and a thoracotomy scar, rated as 10% disabling. R. at 99; *see* 38 C.F.R. § 4.73, DC 5302 (identifying muscles contained in MG II). In its decision, the RO noted that the appellant had sustained "a [GSW], through[-]and[-]through, of the right lung." R. at 98. The appellant's combined rating was 30%. R. at 99.

In the report from a March 1971 VA chest examination, under the caption "Physical Examination of the Chest," the examiner noted a "[w]ell[-]developed and symmetrical with healed thoracotomy scars on the right and normal excursions." R. at 110. In an April 1971 VA medical examination report, an examiner noted that the thoracotomy scar was tender to palpation and that the missile-entry scar was "flat[,] non[-]adherent, non[-]tender to palpation." R. at 103-04. That examiner noted that the appellant's muscle injuries involved "[MGs] II, XX, and XXI" and diagnosed him as having "[r]esiduals [b]ullet wound [and] tender surgical scar–right chest." R. at 104.

Subsequent to the conclusion of his second period of service, the RO, in an April 1982 decision, continued the appellant's rating for, inter alia, residuals of a GSW to the chest, involving injury to MGs I and II and a thoracotomy scar, effective April 1, 1981; the RO also noted that the appellant's combined rating was 50%, effective April 1, 1981. R. at 151-52; *see* R. at 154. In a May

3

1986 VA special orthopedic examination report, the examiner opined that the appellant's thoracotomy scar was "non[-]tender[ and] mobile[ with] occasional[] feeling of numbness, but normal sensation today" and that the examiner's impression was a "[GSW to the] right chest with [a] thoracotomy scar, operative injury to [MGs I and II] with essentially full function of the shoulder." R. at 176.

The appellant, in January 1996, filed with the RO a claim for, inter alia, increased ratings for his service-connected GSW disabilities. R. at 185. In March 1996, the appellant underwent a VA compensation and pension examination, orthopedic examination, and scar examination. R. at 203-16. In the report from that VA orthopedic examination, during which examination the appellant's muscle damage and functional impairment were evaluated, the examiner reported, inter alia, the appellant's subjective complaint of "arthritic[-]type pain about incision" and, under the caption "Objective findings," the examiner noted a "large scar–mildly tender." R. at 210. That examiner provided a diagnosis of "GSW to chest [with] thoracotomy–[with] tenderness at scar[] . . . and inability to do overhead activity." R. at 212. The VA scar examination report reflects that the appellant had reported "pain [and] discomfort" and that his "pain occurs [with] bending" and with changes in the weather. R. at 213. In the scar examination report, under the caption "Tender and painful on objective demonstration," the examiner noted that the appellant was "[m]ildly tender at scar." R. at 214. Under the caption "Limitation of function of part affected," the examiner noted that the appellant "reports pain [with] change in weather [with] excess use of [right] arm." *Id*. The Court notes that, although it is difficult to discern from the scar examination report which of the three scars the examiner is referring to, the examiner noted, under the caption "Cosmetic effects," an "approx[imately] 40[-centimeter] scar [that is a] standard lateral thoracotomy incision." *Id*.

The RO, in May 1996, notified the appellant that it had denied his claims for increased ratings. R. at 219-26. In that decision, the RO, inter alia, characterized the issue as a claim for an increased rating for a GSW to the chest, involving injury to MGs I and II and a thoracotomy scar, currently evaluated as 10% disabling. R. at 220. In a September 1996 decision, the RO confirmed its May 1996 decision; it characterized the issue as an increased rating for a GSW to the chest, involving injury to MGs I and II, currently evaluated as 10% disabling. R. at 224-25. In that decision, the RO noted that, on examination, "a large scar in the area of the right chest" demonstrated

4

mild tenderness and that the appellant had had subjective complaints of pain with changes in the weather. R. at 225. With regard to the thoracotomy scar, the RO noted that the appellant had stated that that scar was painful with weather changes and it "[made] performing overhead activities difficult." *Id.* Subsequently, the appellant submitted to the RO his Notice of Disagreement (NOD) (R. at 228-29), and the RO issued a Statement of the Case (SOC), dated March 28, 1997 (R. at 231-34). In that SOC, the RO characterized the issue as a claim for an increased rating for, inter alia, a GSW to the chest, involving injury to MGs I and II. R. at 233. The RO continued the denial of an increased rating for that disability. R. at 240.

On June 3, 1997, VA substantially revised its rating schedule with respect to musculoskeletal injuries by amending, inter alia, 38 C.F.R. § 4.55 (Principles of combined ratings for muscle injuries) and 38 C.F.R. § 4.56 (Evaluation of muscle disabilities), effective July 3, 1997. 62 Fed. Reg. 30,235, 30,236-38 (1997). In August 1997, the appellant filed with the RO his Substantive Appeal to the BVA in which he requested a hearing. R. at 247-48. During a September 1997 hearing, the appellant answered affirmatively that he had "painful and tender scars of both wounds" and that "these scars have been painful and tender on an ongoing basis." R. at 294-95; *see* R. at 275-97. The appellant, through his representative, requested "consideration of separate [10%] evaluations in accordance with the [Court's decision in] *Este[b]an [v.] Brown*[, 6 Vet.App. 259 (1994),] as separate and distinct conditions from [his] injuries, [his] gunshot wounds that have other residual problems to [MGs]." R. at 295-96. A Supplemental SOC (SSOC) was issued in November 1997; in that SSOC, the RO, inter alia, continued the 10% rating for his service-connected GSW with damage to MG I. R. at 299-302. The RO found:

> The current 10% evaluation for damage to [MG] I is based on moderate damage to this [MG] and the function of this [MG] is upward rotation of the scapula and elevation of the arm above shoulder level. Since this is the same impairment the [appellant] reports that the scar causes, a separate 10% evaluation for impairment of function due to the scar is not warranted.

R. at 302.

A VA compensation and pension examination report, dated in August 1998, reflects, inter alia: "The [appellant's] physical exam[ination] shows a 2.0[-]cm wound anterior chest and a 5.0[-]cm wound posterior chest plus a long thoracotomy scar on the right side of the chest. The wounds are

a little bit tender and sore." R. at 311. In October 1998, the RO issued another SSOC in which it, inter alia, continued the appellant's 10% rating for his service-connected "[GSW] with damage to [MGs] I and II." R. at 319. In that SSOC, the RO apparently evaluated the appellant's disability under the DCs applicable to both MGs I and II. R. at 318-20. The RO, in January 1999, issued another SSOC in which it was noted that the RO had scheduled the appellant for a VA scar examination in order for his scars to be considered pursuant to *Esteban, supra*, but that the appellant had failed to report. R. at 324-26. Thus, the RO continued the appellant's ratings for, inter alia, his service-connected residuals of a GSW with damage to MGs I and II. *Id*. In April 1999, the RO issued an SSOC in which it considered the appellant's entitlement to, inter alia, an increased rating for his service-connected residuals of a GSW with damage to MGs I and II under the rating criteria in effect prior to the July 1997 amendments to the schedule of rating muscle disabilities, but it continued the 10% rating. R. at 328-39.

In a May 2000 Statement of Accredited Representative, the appellant asserted, inter alia, that he was entitled to an increased rating for his service-connected residuals of a GSW with damage to MGs I and II. R. at 344. Later that month, the RO certified the appellant's appeal to the Board and that certification reflects, inter alia, that an issue on appeal was entitlement to an increased rating for residuals of a GSW to the chest with damage to MGs I and II. R. at 346; *see* 38 C.F.R. § 19.35 (2003) (regarding certification of appeals). In the October 2000 decision on appeal, the Board, inter alia, denied the appellant's claim for an increased rating, in excess of 10%, for residuals of a GSW of the right chest, involving injury to MG I. R. at 4. The Board did not address whether the appellant was entitled to an increased rating due to his injury to MG II or the thoracotomy scar or a separate rating for injury to that MG.

In determining that the appellant was not entitled to an increased rating, in excess of 10%, for his service-connected residuals of a GSW involving MG I, the Board first addressed the revision of the regulations pertaining to muscle disabilities and stated that, "[a]fter reviewing the regulations in effect at the time of the [appellant's] claim and the changes effective July 3, 1997, the Board finds that the amendments did not substantially change the criteria pertinent to the [appellant's] disability, but rather added current medical terminology and unambiguous criteria." R. at 17. The Board noted the amended criteria, under 38 C.F.R. § 4.56(d)(4), for determining the severity of muscle disabilities

6

and found that "the evidence of record does not provide any basis for a rating in excess of 10[%] . . . [because] the clinical evidence does not show this disability to be more than moderate under [the] applicable rating criteria." R. at 19. In this regard, the Board stated that the appellant's GSW "was a through[-]and[-]through wound from a high-velocity missile, with no retained fragment." *Id*. The Board found that the residuals of the appellant's GSW with damage to MG I "are characterized by good strength[ and] mildly tender scars." R. at 4. In so finding, the Board noted, inter alia, that then-current clinical evidence showed no significant muscle or neurological damage to the right shoulder. *Id*. In this discussion, the Board further noted:

> The Board has also considered the [appellant's] argument that a separate 10[%] rating is warranted for his residual scars. The Board notes that if symptomatology associated with a wound scar is separate and distinct from symptomatology associated with the [DC] criteria for muscle injury, then the disability may be considered for a separate rating. The Board notes that rating of the "same disability" or the "same manifestation" under various diagnoses is to be avoided. 38 C.F.R. § 4.14. In *Esteban*, *supra*, it was held that the described conditions in that case warranted 10[%] ratings under three separate [DCs], none of which provided that a[n appellant] may not be rated separately for the described conditions. Therefore, the conditions were to be rated separately under 38 C.F.R. § 4.25, unless they constituted the "same disability" or the "same manifestation" under 38 C.F.R. § 4.14. *Esteban*, 6 Vet.App. at 261. The critical element cited was "that none of the symptomatology for any one of those three conditions [was] duplicative of or overlapping with the symptomatology of the other two conditions." *Id*. at 262.

> Under 38 C.F.R. § 4.118, [DC] 7804, a separate 10[%] rating is provided for superficial scars found to be tender and painful on objective demonstration. In this case, no distinct symptomatology from the [GSW] scar has been identified. Clinical findings did show that the [appellant's] scars were mildly tender, but there was no evidence of any keloid formation, adherence, herniation, inflammation, swelling, depression, vascular supply, or ulceration. The mild tenderness associated with these scars has already been considered in rating the [appellant's] disability involving [MG] I. Thus, no distinct symptomatology from these scars has been identified which would warrant a separate 10[%] rating under [DC] 7804.

R. at 20-21. The Board thus denied an increased rating, in excess of 10%, for the appellant's service-connected residuals of a GSW, involving MG I. In addition, the Board found that the criteria for an extraschedular rating had not been met.

The appellant, in February 2001, filed with this Court his Notice of Appeal, and the Secretary later moved for a remand in light of the enactment of the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096, and this Court's opinion in *Holliday v. Principi*, 14 Vet.App. 280 (2001), *overruled in part by Dyment v. Principi*, 287 F.3d 1377, 1385 (Fed. Cir. 2002), *and Bernklau v. Principi*, 291 F.3d 795, 806 (Fed. Cir. 2002). In March 2001, the appellant, through counsel, filed an opposition to the Secretary's proposed remand. Later that month, the Court, in a single-judge order, denied without prejudice the Secretary's motion for remand.

Subsequently, the appellant filed a brief in which he argues that the Board erred by failing "to apply 38 C.F.R. §§ 4.25(b), 4.55 (2000), in denying separate ratings for injuries to [MGs] I and II," and by failing "to apply 38 C.F.R. §§ 4.25(b), 4.73 (2000) ([DC] 5301, 5302), 4.118 ([DC] 7804) in denying separate, compensable ratings for each tender and painful scar." Appellant's Brief (Br.) at 10. He thus asks that the Court reverse the October 2000 BVA decision. *Id*. at 21. Specifically, the appellant argues that, pursuant to 38 C.F.R. § 4.55(a), he is entitled to have each of his service-connected disabilities to different muscle groups rated separately because, although the pre-July-1997 version of § 4.55(a) explicitly provided that MG disabilities to the same anatomical region would not be rated separately, the revised regulation, 38 C.F.R. § 4.55(e) (effective July 3, 1997), no longer precludes separate ratings for MG disabilities to the same anatomical region where those MG disabilities act on the same joint. *Id*. at 13.

The appellant also argues that he is entitled to three separate ratings for his three scars because the rating schedule does not provide that MG disabilities and their resulting scars are to be rated as one disability and because MG disabilities and painful scars constitute separate disabilities. *Id*. at 14. He asserts that his muscle disabilities result in the improper functioning of his shoulder joint, which impairs arm and scapula movement, and that he experiences "external" pain and tenderness from his scars. Appellant's Br. at 16. He further argues that the DCs for MGs are based entirely on muscle damage and "[t]he absence of duplicative or overlapping symptomatology is the critical element in establishing separate ratings for muscle injuries and tender and painful scars." *Id*. The appellant contends that DC 7804 (Scars) is ambiguous and that neither the Court nor the Secretary has interpreted this regulation. Appellant's Br. at 16-18. Thus, he contends that the Court should construe the ambiguity in his favor. *Id*. at 18. Moreover, the appellant argues that the

8

Secretary did not make an express exception to § 4.25 that would preclude each scar from being rated separately. *Id*. at 20-21.

In response, the Secretary argues that the Court should affirm the decision because the appellant did not request separate ratings for his disabilities of MGs I and II while his claim was before the BVA; thus, his argument with regard to assigning separate ratings "under the distinct [DCs] for [MGs] I and II is raised for the first time on appeal." Secretary's Br. at 7, 11-13. He acknowledges that several RO decisions and the April 1997 SOC reflect that the issue was characterized as an increased rating for a GSW with injuries to MGs I and II and that the November 1997 SSOC and the Board decision reflect that the issue was recharacterized as an increased rating for a GSW with injury to MG I, but he argues that, regardless of how it has been characterized, the disability consistently has been rated under DC 5301. *Id.* at 16. Further, the Secretary contends that 38 C.F.R. § 4.55(e) does not permit separate ratings for disabilities to muscle groups that act on the same joint. *Id.* at 16-17. Thus, in the Secretary's view, if the Board mischaracterized the issue, i.e., by not considering MG II, that error would be nonprejudicial. *Id*. at 17.

The Secretary also argues that there is a plausible basis in the record to support the Board's determination that separate ratings for the appellant's residual scars are not warranted. *Id.* at 7. Further, the Secretary notes that the appellant is not service connected for residual scars from his service-connected GSW. *Id*. at 19. Last, the Secretary argues that, because "[DC] 7804 has survived judicial review on many occasions," the appellant's argument that that regulation is ambiguous must fail. Secretary's Br. at 21.

With regard to the Secretary's argument that the appellant is presenting for the first time his argument for separate ratings for disabilities of MGs I and II, the appellant responds in his reply brief that the Court should entertain that argument because it would not require additional fact finding and because nothing precludes the Court from considering it in its discretion. Appellant's Reply Br. at 1-7. Moreover, the appellant argues that, in contrast to *McCormick v. Gober*, 14 Vet.App. 39, 44-45 (2000), where the Court ordered a remand for the Board to address in the first instance development issues and arguments regarding certain VA Adjudication Procedure Manual M21-1 provisions that were within VA's particular competency, this appeal raises issues of regulatory interpretation. *Id*.

9

at 7. He thus argues that, because the BVA does not have a particular expertise in regulatory interpretation, there is no reason to order a remand. *Id.*

## II. ANALYSIS

### A. Separate Ratings for Disabilities of MGs I and II

The Secretary contends that the appellant's argument with regard to assigning separate ratings "under the distinct [DCs] for [MGs] I and II is raised for the first time on appeal." Secretary's Br. at 7, 11-13. However, because several RO decisions reflect that the appellant is service connected for residuals of a GSW to the right chest, involving injury to MGs I and II (*see* R. at 99 (May 1966 RO decision), 151 (April 1982 RO decision), 221 (May 1996 RO decision), 224-25 (September 1996 RO decision), 233 (March 1997 SOC), 318 (October 1998 SSOC)), there is no question that his January 1996 claim for increased ratings (R. at 185) encompassed both of these residual disabilities. Moreover, his March 1997 NOD (R. at 228) expressed disagreement with the RO's denial of increased ratings as to these disabilities, and he perfected his appeal (R. at 247-48 (August 1997 Substantive Appeal)). *See Esteban*, 6 Vet.App. at 260-62 (where claimant appealed Board's denial of increased rating for residuals of injury to right side of face, with residual painful scars, injury to facial muscle, and disfigurement under one DC even though it conceded that claimant could have been rated under multiple DCs, Court held, as matter of law, claimant was entitled to combine his established rating under that DC with ratings under two additional DCs). Further, even if the separate-rating issue was not reasonably raised to the Board, the Court will exercise its discretion to consider the appellant's arguments because there is no factual development required to determine whether the Board should have considered rating his disabilities of MG I and MG II separately as part of the increased-rating claim. *See Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000).

Muscle disabilities of MG I are rated under 38 C.F.R. § 4.73, DC 5301, and disabilities of MG II are rated under 38 C.F.R. § 4.73, DC 5302. As the Court noted above, the Secretary, in 1997, revised the regulatory scheme for evaluating muscle disabilities, which revisions became effective on July 3, 1997. *See* 62 Fed. Reg. at 30,235. Although the Board "[found] that the amendments did not substantially change the criteria pertinent to the [appellant's] disability" (R. at 17), the Court

10

concludes that the revisions to § 4.56 are relevant to this matter. In this regard, before the 1997 amendments, 38 C.F.R. § 4.56 provided, in pertinent part:

> § 4.56 Factors to be considered in the evaluation of disabilities residual to healed wounds involving muscle groups due to gunshot or other trauma.
> (a) *Slight (insignificant) disability of muscles.*
>
> *Type of injury.* Simple wound of muscle without debridement, infection or effects of laceration.
>
> . . . .
>
> (b) *Moderate disability of muscles.*
>
> *Type of injury.* Through[-]and[-]through or deep penetrating wounds of relatively short track by single bullet or small shell or shrapnel fragment are to be considered as of at least moderate degree. . . .
>
> . . . .
>
> (c) *Moderately severe disability of muscles.*
>
> *Type of injury.* Through[-]and[-]through or deep penetrating wound by high velocity missile of small size or large missile of low velocity, with debridement or with prolonged infection or with sloughing of soft parts, intermuscular cicatrization.
>
> . . . .
>
> (d) *Severe disability of muscles.*
>
> *Type of injury.* Through[-]and[-]through or deep penetrating wound due to high velocity missile, or large or multiple low velocity missiles, or explosive effect of high velocity missile, or shattering bone fracture with extensive debridement or prolonged infection and sloughing of soft parts, intermuscular binding and cicatrization.

38 C.F.R. § 4.56 (1996). Currently, 38 C.F.R. § 4.56 provides, in pertinent part:

> § 4.56 Evaluation of muscle disabilities.
>
> . . . .
>
> (b) A through-and-through injury with muscle damage shall be evaluated as no less than a moderate injury *for each group of muscles damaged.*

11

. . . .

(d) Under [DCs] 5301 through 5323, disabilities resulting from muscle injuries shall be classified as slight, moderate, moderately severe or severe as follows:

(1) *Slight disability of muscles*.

(i) *Type of injury*. Simple wound of muscle without debridement or infection.

. . . .

(iii) *Objective findings*. Minimal scar. No evidence of facial defect, atrophy, or impaired tonus. . . .

(2) *Moderate disability of muscles*.

(i) *Type of injury*. Through[-]and[-]through or deep penetrating wound of short track from a single bullet, small shell or shrapnel fragment, without explosive effect of high velocity missile, residuals of debridement, or prolonged infection.

. . . .

(iii) *Objective findings*. Entrance and (if present) exit scars, small or linear, indicating short track of missile through muscle tissue. Some loss of deep fascia or muscle substance or impairment of muscle tonus and loss of power or lowered threshold of fatigue when compared to the sound side.

(3) *Moderately severe disability of muscles*.

(i) *Type of injury*. Through[-]and[-]through or deep penetrating wound by small high[-]velocity missile or large low-velocity missile, with debridement, prolonged infection, or sloughing of soft parts, and intermuscular scarring.

. . . .

(iii) *Objective findings*. Entrance and (if present) exit scars indicating track of missile through one or more muscle groups. Indications on palpation of loss of deep fascia, muscle substance, or normal firm resistance of muscles compared with sound side. . . .

38 C.F.R. § 4.56 (a)-(d)(3) (2003) (boldface-italicized emphasis added). In addition to reorganizing the classifications of muscle disabilities, VA, in its 1997 amendments, replaced the content of subparagraph (b) of § 4.56. *But see* 38 C.F.R. § 4.72 (1996). Because the appellant's disabilities involve residuals of a GSW to the right chest with muscle group injury and because the post-1997 § 4.56(b) provides separate ratings "for each group of muscles damaged," a provision that may be more favorable to the appellant, the Court will employ the post-1997 version of the Schedule for Rating Disabilities for the purposes of this appeal. *See Holliday*, 14 Vet.App. at 283-84, *overruled in part on other grounds by Dyment*, 287 F.3d at 1385, *and Bernklau*, 291 F.3d at 806; *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991), *overruled in part by Kuzma v. Principi,* 341 F.3d 1327, 1328-29 (Fed. Cir. 2003). Moreover, the post-1997 version of 38 C.F.R. § 4.56 was in effect at the time of the October 2000 Board decision. *See* 38 U.S.C. § 7104(a), (d)(1).

Although as a general matter the Court often has preferred to remand to the Board the issue whether a revised version of a regulation was more favorable to an appellant than a previous version, we have done so principally in cases where the revised regulation was issued subsequent to the BVA decision on appeal. *See, e.g.*, *Baker v. West*, 11 Vet.App. 163, 168-69 (1998). We also have concluded, however, that revised substantive provisions were more favorable to an appellant and then proceeded to apply those revised provisions ourselves in light of findings in the Board decision when such revised provisions were issued subsequent to the BVA decision on appeal. *See, e.g.*, *Swann v. Brown*, 5 Vet.App. 229, 232-33 (1993); *Hayes v. Brown*, 5 Vet.App. 60, 66-68 (1993). Here, the Board already has determined that the July 1997 amendments "did not substantially change the criteria pertinent to the [appellant's] disability" and applied the revised MG criteria but apparently not revised § 4.56(b). R. at 17. Because the outcome is clear regarding the application of the revised regulatory provision that requires that "[a] through-and-through injury with muscle damage shall be evaluated as no less than a moderate injury for each group of muscles damaged" (38 C.F.R. § 4.56(b)), a remand for the Board to determine whether that revised regulation is more favorable to the appellant is neither necessary nor appropriate. *See Swann* and *Hayes*, both *supra*; *see also Bigelow v. Virginia*, 421 U.S. 809, 826-27 (1975); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 611 n.20 (1978).

In the instant case, the Court concludes that, as to the Board's determination regarding the appellant's increased-rating claim, the Board failed to recognize his eligibility for separate ratings under DC 5301 and DC 5302 pursuant to the express authority provided in the post-1997 version of 38 C.F.R. § 4.56(b) for rating "as no less than a moderate injury . . . each group of muscles damaged" as a result of "[a] through-and-through injury with muscle damage." 38 C.F.R. § 4.56(b); *see Butts v. Brown*, 5 Vet.App. 532, 540 (1993) (en banc). Specifically, the undisputed evidence of record reflects examiners' observations as to the anterior point of entry of the missile at the pectoral muscles (MG II), the posterior point of exit at the serratus anterior (MG I) (R. at 48, 95-96, 104, 176), and that the muscle disabilities that the appellant sustained from the GSW involve MGs I and II (R. at 95, 104, 176, 319); thus, he suffered "[a] through-and-through injury with muscle damage," 38 C.F.R. § 4.56(b). Hence, he is, as a matter of law, entitled to have "each group of muscles damaged" rated "as no less than a moderate injury" using both DC 5301 and DC 5302. *Id*. Accordingly, the Court will set aside the Board's denial of an increased rating, in excess of 10%, for residuals of a GSW of the right chest, involving only an injury of MG I, and remand the matter with directions that the Board consider 38 C.F.R. § 4.56(b) in its reevaluation of the appellant's muscle disabilities of both MGs I and II under 38 C.F.R. § 4.73, DCs 5301 and 5302. *See* 38 U.S.C. § 7261(a)(3)(A); *Butts, supra*; *Lichtenfels v. Derwinski*, 1 Vet.App. 484, 488 (1991).

### B. Entitlement to Rating(s) under DC 7804

The Court notes that DC 7804 is but one rating that pertains to scarring. As pertinent to the following discussions, 38 C.F.R. § 4.118 provides in part:

Schedule of ratings–skin.

7800  Disfigurement of the head, face, or neck:
With visible or palpable tissue loss and either gross distortion
or asymmetry of three or more features or paired sets of
features (nose, chin, forehead, eyes (including eyelids), ears (auricles),
cheeks, lips), or; with six or more characteristics of disfigurement . . . . . . . . . . . 80

With visible or palpable tissue loss and either gross distortion
or asymmetry of two features or paired sets of features
(nose, chin, forehead, eyes (including eyelids), ears (auricles),
cheeks, lips), or; with four or five characteristics of disfigurement . . . . . . . . . . . 50

With visible or palpable tissue loss and either gross distortion

14

or asymmetry of one feature or paired set of features (nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips), or; with two or three characteristics of disfigurement . . . . . . . . . . . . . . . . . 30

With one characteristic of disfigurement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
**Note (1):** The 8 characteristics of disfigurement, for purposes of evaluation under § 4.118, are:
*Scar* 5 or more inches . . . in length.
*Scar* at least one-quarter inch . . . wide at widest part.
Surface contour of *scar* elevated or depressed on palpation.
*Scar* adherent to underlying tissue.
Skin hypo- or hyper-pigmented in an area exceeding six square inches . . . .
Skin texture abnormal (irregular, atrophic, shiny, scaly, etc.) in an area exceeding six square inches . . . .
Underlying soft tissue missing in an area exceeding six square inches . . . .
Skin indurated and inflexible in an area exceeding six square inches . . . .

. . . .

7801  *Scars*, other than head, face, or neck, that are deep or that cause limited motion:
Area or areas exceeding 144 square inches . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
Area or areas exceeding 72 square inches . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
Area or areas exceeding 12 square inches . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Area or areas exceeding 6 square inches . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
**Note (1):**  *Scars* in widely separated areas, as on two or more extremities or on anterior and posterior surfaces of extremities or trunk, will be separately rated and combined in accordance with [38 C.F.R.] § 4.25 of this part.
**Note (2):**  A deep *scar* is one associated with underlying soft tissue damage.

7802 *Scars*, other than head, face, or neck, that are superficial and that do not cause limited motion:
Area or areas of 144 square inches . . . or greater . . . . . . . . . . . . . . . . . . . . . . . . 10
**Note (1):**  *Scars* in widely separated areas, as on two or more extremities or on anterior and posterior surfaces of extremities or trunk, will be separately rated and combined in accordance with [38 C.F.R.] § 4.25 of this part.
**Note (2):** A superficial *scar* is one not associated with underlying soft tissue damage.

7803  *Scars*, superficial, unstable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
**Note (1):**  An unstable *scar* is one where, for any reason, there

is frequent loss of covering of skin over the scar.
**Note (2):** A superficial *scar* is one not associated with underlying
soft tissue damage.

7804 ***Scars***, superficial, painful on examination . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
**Note (1):** A superficial *scar* is one not associated with underlying
soft tissue damage.

38 C.F.R. § 4.118, DCs 7800-7804 (2003) (boldface-italicized emphasis added).

### 1. Scarring Under DC 7804 and 38 C.F.R. § 4.56

"Except as otherwise provided in the rating schedule, all disabilities, including those arising from a single disease entity, are to be rated separately, and then all ratings are to be combined pursuant to 38 C.F.R. § 4.25." *Esteban*, 6 Vet.App. at 261. However, "evaluation of the 'same disability' or the 'same manifestation' under various diagnoses is to be avoided." *Id*. (quoting "anti-pyramiding provision" of 38 C.F.R. § 4.14 (1993)). In *Esteban,* the appellant was service connected for residuals of an injury to the right side of his face, with residual painful scars, injury to facial muscle resulting in mastication problems, and disfigurement. *Id.* at 260. The Court held that, because none of the symptomatology for the three conditions in question was overlapping or duplicative, the appellant was entitled to have his 10% rating for disfigurement under 38 C.F.R. § 4.118, DC 7800 (1993), combined with an additional 10% rating for painful or tender scarring under 38 C.F.R. § 4.118, DC 7804 (1993), and an additional 10% rating for facial muscle injury interfering with mastication under 38 C.F.R. § 4.73, DC 5325 (1993). *Esteban,* 6 Vet.App. at 261-62.

Here, the appellant contends that his painful scars should be rated separately under 38 C.F.R. § 4.118, DC 7804 (2003), rather than as a component of his muscle disabilities. Appellant's Br. at 14-16. As quoted above, DC 7804 provides for a 10% rating for "[s]cars, superficial, painful on examination." 38 C.F.R. § 4.118, DC 7804. In "Note (1)" of DC 7804, VA has defined "superficial scar" as "not associated with underlying soft tissue damage." *Id*. As set forth above, 38 C.F.R. § 4.56 provides "Objective findings" to be used in classifying the severity of muscle disabilities. 38 C.F.R. § 4.56(d)(1)(iii), (d)(2)(iii), (d)(3)(iii). With regard to evaluating moderate muscle disability, which corresponds to the appellant's 10% rating for injury to MG I under DC

5301, the "Objective findings" subparagraph provides: "Entrance and (if present) exit scars, small or linear, indicating short track of missile through muscle tissue. Some loss of deep fascia or muscle substance or impairment of muscle tonus and loss of power or lowered threshold of fatigue when compared to the sound side." 38 C.F.R. § 4.56(d)(2)(iii).

Because 38 C.F.R. § 4.56 does not contain any provision regarding the painfulness of a scar that is a component of a muscle disability, the symptomatology used to rate a "[s]uperficial[ and] painful" scar (38 C.F.R. § 4.118, DC 7804) is not "duplicative of" or "overlapping with" the muscle-injury evaluation criterion that is contained in 38 C.F.R. § 4.56(d). *Esteban*, *supra*. Thus, obtaining a rating in accordance with 38 C.F.R. § 4.56(d) does not necessarily preclude a separate scar rating under 38 C.F.R. § 4.118, DC 7804. *Id*. However, as noted above, "Note (1)" of DC 7804 limits the application of that rating to scars that are "superficial[ and] painful on examination" but that are "not associated with underlying soft tissue damage." 38 C.F.R. § 4.118, DC 7804, Note (1). Hence, to the extent that the appellant's scars are painful and are "not associated with underlying soft tissue damage," *id*., the appellant may be rated under both 38 C.F.R. §§ 4.56(d) and 4.118, DC 7804.

In this regard, with respect to the appellant's thoracotomy, entry-wound, and exit-wound scars, the Court notes that the record contains evidence as to the painfulness or tenderness of those scars but does not reflect any information as to whether the appellant's scars are "associated with underlying soft tissue damage." *Id*. Specifically, a 1996 orthopedic examination report reflects a "large scar–mildly tender" (R. at 210); a 1996 scar examination report reflects that the appellant had reported "pain [with] change in weather [with] excess use of [right] arm" (R. at 214); and the appellant, in his 1997 testimony, answered affirmatively that he had had "painful and tender scars of both wounds" and that his "scars have been painful and tender on an ongoing basis" (R. at 294-95). *See* R. at 48 (describing location of appellant's GSW and subsequent thoracotomy), 90 (same), 95-96 (same). Hence, because it is unclear whether the appellant's scars are associated with underlying soft tissue damage, the Court will remand this matter for VA to provide a special scar examination. *See* 38 U.S.C. § 5103A (providing VA's statutory obligation to assist claimant in substantiating his claim); *Mariano v. Principi*, 17 Vet.App. 305, 314 (2003) (where record did not provide clear medical evidence, Court, inter alia, vacated Board's finding and remanded matter for Board to take necessary development steps); 38 C.F.R. § 3.159 (2003); *see also Layno v. Brown*,

17

6 Vet.App. 465, 469-70 (1994) (lay evidence is competent to establish features or symptoms of injury or illness).

## 2. Separate Ratings for Multiple Scars under DC 7804

The Board found that the appellant was not entitled to a separate rating under DC 7804 for each scar. R. at 20-21. Although the appellant asks that the Court find that the term "[s]cars" in DC 7804 is ambiguous and interpret it in his favor so as to provide a separate rating for each scar (Appellant's Br. at 16-18), for the reasons that follow, the Court today is not prepared to make any such interpretation as to whether DC 7804 provides ratings for scars cumulatively or individually. First, until such time as there is a determination that the appellant has at least two scars that are not associated with underlying tissue damage, *see* part II.B.1, *supra*, it would be premature for the Court to make any such interpretation. Second, even assuming that the appellant has multiple scars not associated with underlying tissue damage, there are a variety of interpretative issues presented that the Court believes the Secretary should address in the first instance. *See Mariano*, 17 Vet.App. at 318; *Cotant v. Principi*, 17 Vet.App. 116, 130 (2003) (directing Secretary to "straighten[] out . . . complicated . . . web" created by VA regulations); *McCormick*, 14 Vet.App. at 45; *cf. Wanner v. Principi*, 370 F.3d 1124, 1129-31 (Fed. Cir. 2004). For example, 38 C.F.R. § 4.118, as it relates to scarring, references both "scars" and "scar," and the consequences of such intermittent use of the plural and the singular are not entirely unclear. 38 C.F.R. § 4.118. More specifically, DC 7804 under which the appellant seeks multiple ratings contains the plural and its "Note (1)" contains the singular. 38 C.F.R. § 4.118, DC 7804. Moreover, the Court notes the possible disconnect between DC 7804, which may permit unlimited multiple ratings for less significant scarring, and DC 7800, which addresses more significant scarring but provides a maximum rating of 80%. *See* 38 C.F.R. § 4.118, DCs 7800, 7804. Similarly, it appears that interpreting "superficial[ and] painful" (38 C.F.R. § 4.118, DC 7804) to mean that each scar, regardless of size or physical location, could be rated at 10% may not comport with DC 7801, which provides ratings for severe scarring, of which the ceiling is a maximum 40% rating for a "[s]car[], other than [the] head, face, or neck, that [is] deep or that cause[s] limited motion," for an "area or areas" exceeding one square foot. 38 C.F.R. § 4.118, DC 7801. In this regard, the Court notes that DC 7801 appears to account for the

physical size of a scar but not the number of scars. Hence, the Court remands this matter for the Secretary to address these issues utilizing the results of the special scar examination as appropriate.

### III. CONCLUSION

Based upon the foregoing analysis, the record on appeal, and the parties' pleadings, the October 16, 2000, Board decision is SET ASIDE in part and VACATED in part and two matters are REMANDED for readjudication consistent with this opinion. *See Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) (remand is meant to entail critical examination of justification for decision; Court expects that BVA will reexamine evidence of record, seek any other necessary evidence, and issue timely, well-supported decision). On remand, the appellant is free to submit additional evidence and argument, including those raised in his briefs to this Court, in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). In addition, the Board shall proceed expeditiously, in accordance with 38 U.S.C. § 7112 (Expedited treatment of remanded claims) (codified by the Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 707(b), 117 Stat. 2651, 2673).