**Jerry L. ROBERTSON, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 92–374.**

United States Court of Veterans Appeals.

April 28, 1993.

As Amended May 20, 1993.

Joseph A. Violante, Washington, DC, and Andrew H. Marshall (non-attorney practitioner), were on the brief, for appellant.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Angela Foehl, Washington, DC, were on the pleadings, for appellee.

Before MANKIN, IVERS and STEINBERG, Associate Judges.

IVERS, Associate Judge:

The veteran appeals the December 12, 1991, Board of Veterans' Appeals (BVA) decision which denied entitlement, based on clear and unmistakable error in a rating decision issued in March 1954, to a retroactive rating in excess of 20% for residuals of a gunshot wound of the low back involving Muscle Group XX. On July 27, 1992, the veteran filed his brief. On August 21, 1992, the Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance, for acceptance of this motion in lieu of a brief, and for a stay of proceedings pending a ruling on the motion. On September 3, 1992, appellant filed an opposition to the Secretary's motion for summary affirmance. The Court has jurisdiction over the case under 38 U.S.C.A. § 7252(a) (West 1991).

## I. BACKGROUND

The veteran, Jerry L. Robertson, served on active duty with the United States Marine Corps from November 15, 1951, until November 3, 1953. The veteran saw combat during the Korean Conflict, obtained the rank of Private First Class, and received an honorable discharge. On December 7, 1952, during combat operations, the veteran was wounded in action (WIA). R. at 1. The veteran's application to the Veterans' Administration (now Department of Veterans Affairs) (VA) for compensation describes the injury: "Wounded by enemy sniper bullet. Entered left side, ripped part of spine, and emitted small of back." R. at 2. Service medical records indicate that after being WIA, the veteran received initial treatment at an emergency medical station where "wounds were debrided and left open." R. at 12. The report further stated:

Secondary closure was effected on 16 December 52, aboard [the hospital ship] *Jutlandia.* The bullet entered left flank posteriorly beneath 12th rib and emerged in the midline posteriorly at level L-3 and X-rays reveal fracture of spinous process

of L-3. There is no neurological or vascular damage.... There is minimal limitation of flexion of the spinal column. R. at 11–12. The veteran received a discharge physical on October 26, 1953. R. at 14–17. The examination report stated: "Healed wound scars over left flank and lumbar spine at level L3. Full range of function of spine." R. at 14.

The veteran applied for VA compensation on November 2, 1953, R. at 2–3, and then received a physical examination on February 16, 1954, R. at 18–22. The diagnoses of that examination concluded: "1. Scars GSW [gunshot wound] perforating with moderate damage to sacro-spinalis muscles bilateral and mild damage to left latissimus dorsi. 2. FC spinous process L3 healed." R. at 22. The latissimus dorsi is "a large triangular muscle that covers the lumbar and lower half of the posterior thoracic region." *Gray's Anatomy* 513 (30th ed. 1984). (This is the first mention in the record of this particular aspect of the veteran's wound). The VA Regional Office (VARO) issued its rating decision on March 8, 1954. R. at 23. It determined:

> Veteran suffered a GSW of the back on 12-7-52 which fractured a spinous process of L-3. No neurological or vascular damage was reported. The VA examination of above date disclosed a 2″ × 1/2″ scar of entry in the left flank and a 4″ × 1/2″ scar of exit over L-3. There was moderate muscle damage to the sacro-spinalis muscles in the area of L-3. There was a minimal limitation of motion of the lumbar spine, but all other spinal movements were normal. X-ray showed no abnormality whatsoever of the spinous process of L-3.

*Id.* The VA granted service connection for "GSW, back, involving Muscle Group XX" and rated the veteran's service-connected disability at 20%. *Id.*

On December 5, 1988, the veteran applied for an increase in compensation. In that claim, the veteran noted that he had been treated by the VA hospital as an outpatient on November 28, 1988. R. at 25. The veteran's clinical progress reports from October 1988 through February 1989

were provided. R. at 26–36. The VARO issued a confirmed rating decision on June 5, 1989, denying any increase. R. at 37–38. The veteran filed a Notice of Disagreement in November 1989. R. at 39–40. A Statement of the Case (SOC) was issued in December 1989. R. at 41–44. A VARO hearing was held on March 29, 1989. R. at 47–63. A second VA medical examination was conducted on March 9, 1990. R. at 64–68. The hearing officer issued his decision on August 28, 1990. He denied an increase and determined that no clear and unmistakable error had been committed in the March 1954 decision. R. at 69–70. In September 1990, a Supplemental SOC was issued. R. at 71–75. On March 1, 1991, the BVA issued its first decision. It addressed two issues: (1) entitlement to an increased evaluation for the residuals of a gunshot wound of the low back, rated as 20% disabling and (2) entitlement to a separate compensable rating for the residuals of a gunshot wound of the left shoulder girdle (of which the latissimus dorsi is a part). R. at 83–90. The BVA denied the increase for residuals of the gunshot wound to the low back. However, it awarded a separate 20% disability rating for residuals of a gunshot wound of the left shoulder girdle, a second muscle group (Muscle Group II) involved in the veteran's wound. R. at 89. (The Court notes that the 1991 BVA proceedings present the first time that the veteran has raised, and the VA or the Board has considered, injury to this muscle group.)

In October 1991, the veteran petitioned the BVA for reconsideration of the claim for entitlement to an increased rating for residuals of the gunshot wound to the low back involving Muscle Group XX, evaluated at 20% disabling, on the basis of clear and unmistakable error in the March 8, 1954, rating decision. R. at 91–97. Reconsideration was granted and, in December 1991, the BVA reviewed the veteran's appeal on this issue. *Jerry L. Robertson*, BVA 91-40264 (Dec. 12, 1991). In its decision, the BVA first noted that the VARO had not yet established an effective date for award of the 20% disability for the wound to the left shoulder girdle (Muscle Group II). Consequently, the BVA did not

address that issue. *Id.* at 2. As to the issue of whether clear and unmistakable error had been committed in the original March 8, 1954, rating decision with regard to the 20% rating for residuals of GSW involving Muscle Group XX, the BVA focused on the veteran's recorded medical history, particularly the separation examination and the initial VA examination, which did indicate "relatively mild function impairment," and on 38 C.F.R. Part 4, Diagnostic Code (DC) 5320. *Id.* at 6. The BVA concluded:

> In summary, despite the through-and-through nature of the wound and the associated insignificant vertebral spinous process fracture, the precise site of the fracture, the course of treatment and healing, and the residual functional impairment noted at the time of separation from service and on initial VA examination all indicate that the veteran's gunshot wound of the low back involving Muscle Group XX was no more than moderate in extent.

*Id.* Consequently, the BVA denied a retroactive rating in excess of 20% based on clear and unmistakable error in the March 1954 rating decision. *Id.* at 7. The veteran filed a timely appeal to this Court.

## II. ANALYSIS

Before addressing the issue of clear and unmistakable error, it is important to take note of the Court's recent holding in *Russell v. Principi*, 3 Vet.App. 310 (1992) (en banc) (consolidated with *Collins v. Principi*, No. 90–416). In that opinion, the Court addressed the validity of 38 C.F.R. § 3.105(a) (1992), which authorizes the BVA or a VARO to revise previous decisions where there was "clear and unmistakable error," and the scope of this Court's judicial review of that regulation. We upheld the validity of 38 C.F.R. § 3.105(a) which gives the Secretary the authority to review previous BVA decisions under "the clear and unmistakable error" test, despite the fact that the regulation was promulgated by the Secretary without a specific statutory mandate. *Russell*, 3 Vet.App. at 313. We also held that

our review of a decision, over which we have jurisdiction, i.e., one that has considered possible "clear and unmistakable error" in previous adjudications over which we do not have jurisdiction is necessarily limited to determining whether the BVA decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." *See* 38 U.S.C. § 7261(a)(3)(A) (formerly § 4061(a)(3)(A)). Implicit in this holding is the requirement that the issue must have been adjudicated below. The necessary jurisdictional "hook" for this Court to act is a decision of the BVA on the specific issue of "clear and unmistakable error." For a claimant to raise such an issue for the first time before this Court and request us to act de novo is tantamount to requesting plenary review over decisions that are not within our jurisdiction. Of course, as is true in all cases, this Court must also review to determine whether adequate "reasons or bases" were given for the instant BVA decision. *See* 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990).

*Id.* at 315.

With the issues of both the jurisdiction of this Court and its scope of review of BVA decisions under section 3.105(a) established, we can address the December 11, 1991, BVA decision which reviewed the earlier March 8, 1954, VARO rating decision.

The veteran argues that the relevant regulations require award of a "moderately severe" disability rating, as opposed to the "moderate" disability rating actually awarded, simply because the veteran's wound included debridement. Br. of Appellant at 6, 7–9. *See also* 38 C.F.R. § 4.56 (1992). Debridement is defined as "the surgical removal of lacerated, devitalized, or contaminated tissue." WEBSTER'S MEDICAL DESK DICTIONARY 164 (1986). The veteran, therefore, argues that, since his wound disabled him to a "moderately severe" degree, as opposed to only a "moderate" degree, he is entitled to a 40% rating, instead of a 20% rating, based upon the rating schedule itself. *See* 38 C.F.R. § 4.72, DC 5320 (1992).

Title 38 C.F.R. § 4.56 spells out the "factors to be considered" in establishing the degree of disability. Section 4.56(b) defines "moderate" disability of muscles:

*[T]ype of injury.* Through and through or deep penetrating wounds of relatively short track by single bullet or small shell or shrapnel fragment are to be considered of at least moderate degree. *Absence of explosive effect of high velocity missile and of residuals of debridement* or of prolonged infection.

*History and complaint.* Service department record or other sufficient evidence of hospitalization in service for treatment of the wound. Record in the file of consistent complaint on record from first examination forward, one or more of the cardinal symptoms of muscle wounds particularly fatigue, fatigue pain after moderate use, affecting the particular functions controlled by injured muscles.

*Objective findings.* Entrance and (if present) *exit scars linear or relatively small and so situated as to indicate relatively short track of missile through muscle tissue; signs of moderate loss of deep fascia or muscle substance or impairment of muscle tonus, and of definite weakness or fatigue in comparative tests.*

38 C.F.R. § 4.46(b) (1992) (emphasis added). Section 4.56(c) defines "factors to be considered" for "moderately severe" disability of muscles:

*[T]ype of injury.* Through and through or deep penetrating wounds by high velocity missile of small size or large missile of low velocity, with debridement or with prolonged infection or with sloughing of soft parts, intermuscular cicatrization.

*History and complaint.* Service department record or other sufficient evidence *showing hospitalization for a prolonged period in service for treatment of wound of severe grade.* Record in the file of consistent complaint of cardinal symptoms of muscle wounds. *Evidence of unemployability because of in-*

*ability to keep up with work requirements is to be considered, if present.*

*Objective findings. Entrance and (if present) exit scars relatively large and so situated as to indicate track of missile through important muscle groups. Indications on palpation of moderate loss of deep fascia, or moderate loss of muscle substance or moderate loss of normal firm resistance of muscles compared with sound side Tests of strength and endurance of muscle groups involved (compared with sound side) give positive evidence of marked or moderately severe loss.*

38 C.F.R. § 4.56 (1992) (emphasis added). *Russell* provides that clear and unmistakable error in a prior adjudication exists only if "either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied. The claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." 3 Vet.App. at 313. As to the application of regulation § 4.56, it is clear that under that regulation the mere fact of debridement does not establish entitlement to more than a "moderate" disability evaluation. Rather, the adjudicator must consider all the factors set forth in the regulations and make determinations based on the facts of the particular case. Therefore, evidence of debridement alone is not sufficient to demonstrate a clear and unmistakable error in the application of § 4.56 in the 1954 VARO decision.

Given these criteria and the regulatory "factors to be considered," and based upon a review of the evidence of record in the 1954 VARO decision, it cannot be concluded that the VARO then misapplied the applicable regulations in determining that the veteran's injury more closely resembles the characteristics of the "moderate" category than that of the "moderately severe" category. The evidence of record adequately supports findings (1) that there were no residuals from the debridement, (2) that the veteran recovered quickly, (3) that he recovered with only minimal loss of mobility, and (4) that there is no history of

unemployability. The Court, therefore, holds that the December 12, 1991, BVA decision finding that there was no clear and unmistakable error committed in the March 8, 1954, VARO rating decision establishing a 20% disability rating for the low back aspect of the service-connected injury was not itself "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." *See* 38 U.S.C.A. § 7261(a)(3)(A) (West 1991). The Court is also satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C.A. § 7104(d)(1) (West 1991). *See Russell, supra; Gilbert,* 1 Vet.App. at 53–56. Although the BVA did not address appellant's "debridement" argument, that failure is not prejudicial in light of this Court's having done so, above. *See* 38 U.S.C.A. § 7261(b) (West 1991).

### III. CONCLUSION

For reasons stated above, the Court AFFIRMS the BVA decision denying entitlement, based on clear and unmistakable error in a rating decision in March 1954, to a retroactive rating in excess of 20% for residuals of gunshot wound of the low back involving Muscle Group XX.