# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1923

LAWRENCE M. TROPF, APPELLANT,

v.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    August 24, 2006    )

*James W. Stewart* (non-attorney practitioner), *Barton F. Stichman*, and *Nancy L. Foti*, all of Washington, D.C., were on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Richard Mayerick*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and LANCE and SCHOELEN, *Judges*.

LANCE, *Judge*: The appellant, veteran Lawrence M. Tropf, appeals, through counsel, that part of a July 1, 2003, decision of the Board of Veterans' Appeals (Board) that denied an increased disability rating for residuals of a shell fragment wound (SFW) of the back including Muscle Group (MG) XX; a compensable disability rating for an SFW of the right upper arm including MG III; and a compensable disability rating for residuals of a healed fracture of the distal end of the right fibula. Record (R.) at 1-15. The appellant makes no argument regarding the Board's denial of a compensable disability rating for the service-connected residuals of a healed fracture of the distal end of the right fibula. Accordingly, any issues on appeal concerning this claim are abandoned. *See Ford v. Gober*, 10 Vet.App. 531, 535 (1997) (claims not argued on appeal are deemed abandoned); *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993). For the reasons that follow, the Court will affirm the Board decision in part, vacate it in part, and remand one matter for further proceedings consistent with this opinion.

I. FACTS

The appellant served on active duty in the U.S. Army from April 1966 to May 1970. R. at 17. During his service, he sustained SFWs in combat in Vietnam. *Id.* There are no definitive service medical records indicating whether his injured muscles retain shell fragments.

In May 1970, the appellant filed a claim for disability compensation for residuals of a shrapnel injury to the right side of his back. R. at 46-47. In July 1970, a VA regional office (RO) granted service connection for an SFW to the back with retained metallic fragments and assigned a 10% disability rating under 38 C.F.R. § 4.118, Diagnostic Code (DC) 7804 (2006) (disability caused by scar). R. at 56. During a VA examination in June 1975, an x-ray showed small metallic fragments in the "soft tissues" of the back to the right of the midline. R. at 61. In a June 1975 rating decision, the RO continued the 10% disability rating for the appellant's scar. R. at 64. A January 1983 rating decision confirmed the 10% disability rating for a tender scar under DC 7804. R. at 66.

The claims here on appeal began in September 2001. At that time, the appellant sought an increased rating for residuals of the SFW of the back and sought service connection for residuals of an SFW of the right upper arm. R. at 68. At a December 2001 VA examination, the physical examination of the appellant's right flank revealed a barely visible scar that was "mildly tender on palpation." R. at 82. X-rays of his thoracic spine showed the presence of at least three small metallic foreign bodies within the "soft tissues" of the right lower thoracic back area. R. at 86-87. Examination of the right shoulder revealed no visible scar or evidence of residual shrapnel. There was no muscle loss, tissue loss, or muscle atrophy. R. at 82. X-rays revealed several small metallic fragments in the soft tissues surrounding the right humerus. R. at 83; Supplemental R. at 1.

In February 2002, the Pittsburgh, Pennsylvania, RO granted the appellant service connection for an SFW of the right upper arm and assigned a 0% disability rating under 38 C.F.R. § 4.73, DC 5303 (2006) for MG III. R. at 94-99. The RO denied an increased rating for the SFW of the back with retained metallic fragments. R. at 96-99. That decision indicated that the appellant's previous 10% disability rating for this condition was assigned under DC "7804-5320" (the DC for scars and the DC for muscle injury, respectively). R. at 99. The appellant appealed to the Board. R. at 101.

On July 1, 2003, the Board issued the decision here on appeal. As to the residuals of the SFW to the appellant's back, the Board concluded that the DC 5320 criteria for a 20% disability

rating were not met. R. at 9-12. As to the residuals of the SFW to the appellant's arm, the Board found that the appellant's current level of disability was not compensable. R. at 12.

On April 4, 2006, the Court issued an opinion in this case, affirming the July 1, 2003, Board decision in part and vacating and remanding one matter for readjudication. *Tropf v. Nicholson*, 20 Vet.App. 45 (2006). On May 15, 2006 the Secretary filed a motion for panel reconsideration and for a full-Court decision should panel reconsideration be denied. The Secretary's motion did not seek a change in the outcome of the case but only the elimination of one holding that he asserted was unnecessary to the conclusion reached by the Court. Today, the Court will grant the Secretary's motion for reconsideration, withdraw its prior opinion, and issue this opinion in its stead.

## II. THE PARTIES' ARGUMENTS

The appellant argues for reversal of the Board's decision on his disability ratings for the residuals of his arm and back injuries. First, he argues that the Board erred as a matter of law in failing to assign a separate disability rating of at least 10% for a "moderate" injury to his back under DC 5320, in addition to the 10% disability rating for a painful scar granted under DC 7804. Appellant's Brief (Br.) at 12-15. He asserts that the RO's use of a hyphenated DC to assign a single 10% disability rating for two separate residuals was not authorized by law and that he is entitled to two separate 10% disability ratings. *Id.*

The appellant also argues that the Board erred as a matter of law by failing to assign a 20% rating under 38 C.F.R. § 4.56 (2006), DC 5303, for a moderate injury of his arm. Appellant's Br. at 15-18. He asserts that, because his arm injury has retained metallic fragments, he is entitled to a 20% disability rating for a "moderate" muscle injury, rather than the 0% assigned for a "slight" injury. Appellant's Br. at 16-18. He also argues that the Board is required to assign like evaluations for like injuries and that the Due Process Clause of the Fifth Amendment requires the Board to treat the injury to his arm similarly to the injury to his back. Appellant's Br. at 15-16.

In his brief, the Secretary does not defend the use of the hyphenated DC to rate the appellant's back injury. Secretary's Br. at 5. However, he asserts that the matter should be remanded because it is not clear that the Board made the necessary factual findings. Secretary's Br. at 5-6. Regarding the appellant's arm injury, he maintains that a remand is also necessary because there has been no

3

clear finding of fact that the fragments–which have been described by the medical reports as located in the "soft tissue"–are in the muscle as purportedly required under the applicable regulations. Secretary's Br. at 6-7.

In his reply brief, the appellant argues that the Board made the factual findings necessary to enable the Court to reverse the Board's decision on his back injury and that 38 C.F.R. § 4.56(d) does not explicitly require the fragments to be retained in the muscle tissue of his arm. Appellant's Reply Br. at 5-6.

## III. ANALYSIS

### A. Standard of Review

Both of the appellant's arguments on appeal require us to review the Board's interpretation of regulations implementing title 38 regarding those claims considered by the Board. We review the interpretation of regulations de novo. *Hatch v. Principi*, 18 Vet.App. 527, 531 (2004). On review, if the meaning of the regulation is clear from its language, then that is "the end of the matter." *Brown v. Gardner*, 513 U.S. 115, 120 (1994).

### B. 38 C.F.R. § 4.27 and the Appellant's Back Injury

Although the Secretary contests only the remedy, a brief discussion of the applicable regulation is warranted because the Court has never analyzed the portion of 38 C.F.R. § 4.27 (2006) quoted below. As to the appellant's back injury, VA's use of hyphenated ratings is directed in 38 C.F.R. § 4.27, which reads in pertinent part:

> *With diseases*, preference is to be given to the number assigned to the disease itself; if the rating is determined on the basis of residual conditions, the number appropriate to the residual condition will be added, preceded by a hyphen. Thus, rheumatoid (atrophic) arthritis rated as ankylosis of the lumbar spine should be coded "5002-5289." In this way, the exact source of each rating can be easily identified.

(emphasis added).

On its face, the clear purpose of a hyphenated rating is to add information to help describe the origins of a single disability when the disability is not one listed under the explicit DC for the given condition. Contrary to the plain language of the statute and the unsupported interpretation and application by the Board (R. at 9), the use of the hyphenated rating in this case was not strictly

4

informational in that the MG XX injury was not an unusual residual of the scarring but rather a separate disability. In this regard, this Court has held that if an injury or disease manifests with two different disabilities, then two separate ratings should be awarded. *Smith v. Nicholson*, 19 Vet.App. 63, 75 (2005); *Esteban v. Brown*, 6 Vet.App. 259, 261 (1994). Hence, the hyphenated rating was improper here because it was used in violation of precedent that requires two different disabling conditions (a scar and a muscle injury) to be rated separately.[1] *See* 38 C.F.R. § 4.27.

---

[1]Upon the Secretary's motion for reconsideration, the Court has removed from this revised opinion its holding that hyphenated ratings are not permitted for injuries under 38 C.F.R. § 4.27. The Court agrees with the Secretary that the holding was not necessary. However, the Secretary should not cite our opinion here as evidence of the Court's agreement with any of his substantive argument on this point should the issue be squarely presented to it in the future. It is true that the Court is obligated to defer to the Secretary's interpretation of his own regulation when it is ambiguous. *See Smith v. Nicholson*, 451 F.3d 1344, 1350 (Fed. Cir. 2006). However, a regulation is not ambiguous merely because the Secretary takes a litigation position that contradicts the plain language of the regulation. Rather, a statute is ambiguous only when the application of the ordinary meaning of words and rules of construction to the plain language of the regulation fails to answer the question at issue. *See*, *e.g.*, *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) (ambiguity is a conclusion reached when the question presented is not answered "at the level of literal language"). In this case, the Secretary asserts that the meaning of the regulation is clear because the sentence prior to the one at issue refers to both "diseases and injuries." However, the Secretary offers no support for his assertion that the subject of this prior sentence should be grafted onto the sentence at issue, which explicitly refers to "diseases" only. Numerous authorities state that when a statute or regulation omits a term in one place that is used in other places, that omission should be regarded as intentional and given effect. *See Savage v. Gober*, 10 Vet.App. 488, 496 (1997) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) (alteration in *Russello*))); *cf. Brown v. Gardner*, 513 U.S. 115, 118 (1994); *Davenport v. Brown*, 7 Vet.App. 476, 484 (1995). In the absence of authority supporting an opposite conclusion, the Secretary's textual argument is suspect.

To the extent that the Secretary argues that there are over 60,000 cases where hyphenated ratings are currently being used to rate injuries, it is also well established that the unchallenged historical practice of the Secretary is not evidence that the practice is correct. *See Brown v. Gardner*, 513 U.S. at 122 ("'The length of regulations' unscrutinized and unscrutinizable existence' [does] not alone . . . enhance any claim to deference." (quoting *Gardner v. Brown*, 5 F.3d 1456, 1463-64 (Fed. Cir. 1993))). The sheer number of such cases does not prove that even a single one is correct. The Secretary has not offered a single example of where the use of a hyphenated rating for an injury would add information rather than disguise error. In this regard, the Court notes that many diseases have their own specific diagnostic code. *See*, *e.g.*, 38 C.F.R. §§ 4.71a, DC 5002 (rheumatoid (atrophic) arthritis), 4.120, DC 7913 (diabetes mellitus), 4.124a, DC 8910-14 (epilepsy) (2006). It makes sense to have a tool that explains how such diseases are being rated when the explicit diagnostic code for the condition is inadequate. However, the remainder of the rating code is not organized by injury. Rather, it is generally organized by body part and the limitations thereon. Where an injury causes a specific limitation to a particular body part, there is no apparent need for additional information if the appropriate diagnostic code is chosen. If more than one limitation is present, then the appropriate course is to recognize each of them and then combine the two separate ratings. *See Esteban*, 6 Vet.App. at 261. If a service-connected disability causes another disability to occur, the appropriate course is to grant secondary service connection and, again, rate the disabilities separately. *See Libertine v. Brown*, 9 Vet.App. 521, 522 (1996); 38 C.F.R. § 3.310(a) (2006). The Secretary does not offer an example of a situation where a hyphenated rating code would be an appropriate vehicle merely adding information about how an injury is being rated instead of avoiding awarding two separate ratings when two separate disabilities are present.

Ultimately, the Court recognizes that it is the prerogative of the Secretary to implement title 38 of the U.S. Code

We must now address the appropriate remedy. The appellant argues that the facts necessary to support separate disability ratings have been found and that the Court should assign a 10% disability rating for the MG XX injury and continue the 10% disability rating for his scar. Appellant's Br. at 14-15. The Secretary contends that a remand is necessary for appropriate factfinding. Secretary's Br. at 6-7. We agree with the Secretary. While the Board found that the qualifications for a 20% disability rating for MG XX had not been met (R. at 12), a fair reading of the Board decision indicates that the Board did not notice or consider the implications of the improper hyphenated rating or make a factual finding on whether the appellant's MG XX injury qualifies for a separate 10% disability rating. The Board concluded: "In essence, there is no evidence of a moderately severe disability . . . . Therefore, the Board finds that a rating in excess of the currently assigned 10[%] injury to Muscle Group XX is not warranted." R. at 12. From this statement, the Board evidently believed that the appellant's preexisting 10% disability rating was for a muscle injury, when in fact it was for his scar. We decline to read purposeful factfinding into the Board's evident confusion. Accordingly, the 10% disability rating for his scar remains under DC 7804, and the Board must determine whether a separate disability rating is warranted under DC 5320 for the MG XX injury.

On remand, the appellant is free to submit additional evidence and argument, and the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Board shall proceed expeditiously, in accordance with 38 U.S.C. §§ 5109B, 7112 (West Supp. 2005) (requiring Secretary to provide for "expeditious treatment" of claims remanded by Board or Court).

## C. 38 C.F.R. § 4.56 and the Appellant's Arm Injury

As to the appellant's right, upper arm injury, he argues that he is entitled to a higher rating "as a matter of law" because the Board misapplied 38 C.F.R. § 4.56 in failing to acknowledge the

---

through regulation. If the Secretary were to amend his regulation so that the sentence on hyphenated rating explicitly referred to both "diseases and injuries" then there would be no issue for the Court to resolve regarding the plain meaning of the regulation. However, the Court reminds the Secretary a functioning system of laws must give primacy to the plain language of authorities, not the Secretary's litigation position. Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or–more importantly–veteran can rely on a statute or regulation to mean what it appears to say. In such a realm, claimants would always be at the mercy of the Secretary's litigation position and there would be no meaningful role for the Court to perform under the separation of powers. This is not the manner in which the rule of law operates.

retained metallic fragments in his muscle. Appellant's Br. at 15. In making this argument, he explicitly states that the error occurred "under the facts found by the Board." *Id.* We observe that the third enumerated finding of fact in the Board decision is: "The [appellant]'s [SFW] of the right upper arm results in no significant residuals and is essentially asymptomatic." R. at 3. This enumerated finding was based on the Board's finding, during a December 2001 examination, that "the [appellant] himself admitted that his right arm presented no restrictions and movements and clinical findings did not demonstrate otherwise." R. at 11. Accordingly, the question is whether an appellant who has retained metallic fragments in the muscle but is essentially asymptomatic is entitled to a compensable disability under the applicable regulation as a matter of law.

The appellant bases his argument on the language of 38 C.F.R. § 4.56, which reads in pertinent part:

(d) Under diagnostic codes 5301 through 5323, disabilities resulting from muscle injuries shall be classified as slight, moderate, moderately severe or severe, as follows:

(1) *Slight disability of muscles*—(i) *Type of injury*. Simple wound of muscle without debridement or infection.

(ii) *History and complaint*. Service department record of superficial wound with brief treatment and return to duty. Healing with good functional results. No cardinal signs or symptoms of muscle disability as defined in paragraph (c) of this section.

(iii) *Objective findings*. Minimal scar. No evidence of fascial defect, atrophy, or impaired tonus. **No** impairment of function or **metallic fragments retained in muscle tissue.**

(2) *Moderate disability of muscles*—(i) *Type of injury*. Through and through or deep penetrating wound of short track from a single shell, small shell or shrapnel fragment, without explosive effect of high velocity missile, residuals of debridement, or prolonged infection.

(ii) *History and complaint.* Service department record or other evidence of in-service treatment for the wound. Record of consistent complaint on record from first examination forward, of one or more of the cardinal signs and symptoms of muscle disability as defined in paragraph (c) of this section, particularly lowered threshold of fatigue after average use, affecting the particular functions controlled by the injured muscles.

7

(iii) *Objective Findings.* Entrance and (if present) exit scars, small or linear, indicating short track of missile through muscle tissue. Some loss of deep fascia or muscle substance or impairment of muscle tonus and loss of power or lowered threshold of fatigue when compared to the sound side.

(boldface emphasis added). The essence of the appellant's argument is that this emphasized language in § 4.56(d) is a per se bar to rating a muscle injury as "slight" (noncompensable under 38 C.F.R. § 4.73, DC 5303(2006)) where there are retained metallic fragments. The Secretary responds that it is not clear whether the fragments noted are in the muscle or the surrounding soft tissue. Secretary's Br. at 6.

Both parties base their arguments exclusively on the plain language of the regulation. However, even though the parties ignore our prior caselaw in this area, we are not free to do so. *See Harrison v. Derwinski*, 1 Vet.App. 438 (1991) (en banc order) (noting that this Court's published opinions are binding precedent and must be respected under principle of stare decisis). The meaning of the language at issue has previously been considered by this Court in *Robertson v. Brown*, 5 Vet.App. 70 (1993). Absent some basis for concluding that *Robertson* is no longer valid, we are obligated to apply it to the extent that it controls the outcome of this case.

*Robertson* considered the same regulatory provisions now contained in § 4.56(d) when they were previously contained in 38 C.F.R. § 4.56(c) (1995). In *Robertson*, the Court addressed the meaning of the provisions in a functionally identical context when the appellant argued that–regardless of actual disability–he was entitled to a "moderately severe" disability rating "simply because [his] wound included debridement." 5 Vet.App. at 73. The Court rejected this interpretation of the regulation, held that the criteria mentioned in 38 C.F.R. § 4.56(c) (1995) were merely "factors to be considered," and further held that no specific fact established entitlement to any particular rating. *Robertson*, 5 Vet.App. at 74. The Court concluded that "[t]he adjudicator must consider all the factors set forth in the regulations and make determinations based on the facts of the particular case." *Id.*

On its face, the appellant's argument that retained metal fragments in the muscle would entitle him to a particular rating as a matter of law is not functionally different from the argument in *Robertson* that the existence of debridement mandates a specific rating regardless of other facts. However, *Robertson*'s validity is not beyond question. Our decision in *Robertson* was based in part

on the then-extant heading of § 4.56, which read: "***Factors to be considered* in the evaluation of disabilities residual to healed wounds involving muscle groups due to gunshot or other trauma.**" 38 C.F.R. § 4.56 (1995) (italic emphasis added). After *Robertson* was decided, the regulation was reorganized; a portion of 38 C.F.R. § 4.72 (1995) was merged into § 4.56; and the factors listed in paragraph (c) were moved to the newly created paragraph (d). 62 Fed.Reg. 30,235-40 (July 3, 1997). At that time, the Secretary dropped the "factors to be considered" language from the § 4.56 heading. The Secretary also added a new paragraph (c), which is referred to in the revised language that was moved to paragraph (d). *Id.* The new paragraph (c) states: "For VA rating purposes, the cardinal signs and symptoms of muscle disability are loss of power, weakness, lowered threshold of fatigue, fatigue-pain, impairment of coordination and uncertainty of movement." 38 C.F.R. § 4.56(c). Significantly however, VA's commentary accompanying the reorganization explicitly states "we d[o] not intend to propose a substantive change." 62 Fed.Reg. at 30,236. Since the reorganization, neither of our published decisions touching on § 4.56 has suggested that the change is substantive or that *Robertson* is no longer good law. *See Jones v. Principi*, 18 Vet.App. 248 (2004); *Mariano v. Principi*, 17 Vet.App. 305 (2003).

In the absence of any basis for finding that *Robertson* has been superceded, we must conclude that it remains valid. In this regard, we note that the addition of the current paragraph (c) is consistent with *Robertson* and the Secretary's comment that no substantive change was intended. *Robertson* interpreted the prior version of the regulation as creating what is, in essence, a totality-of-the-circumstances test. While the test was not explicit in the prior version or in *Robertson*, the new paragraph (c) merely had the effect of memorializing the practice of giving the commonly detectable manifestations of muscle disability priority in evaluating all the factors to be considered. As we held in *Robertson* and reaffirm here, 38 C.F.R. § 4.56(d) is essentially a totality-of-the-circumstances test and no single factor is per se controlling.

Thus contrary to the appellant's argument in this case, because no single fact is controlling, *Robertson* contradicts his contention that he was entitled to a compensable rating as a matter of law based on retained metallic fragments in the muscle. Accordingly, the Board's decision to assign a "slight" (noncompensable) rating for his arm injury based upon the uncontested finding that the appellant is "essentially asymptomatic" was not a misapplication of the regulation as a matter of law.

The only other argument the appellant asserts to challenge Board's decision as to his arm injury is that the Board acted unconstitutionally in applying the muscle-injury rating criteria differently to two similar injuries. We need not address that argument here. As we are vacating the Board's decision as to the rating of the muscle injury to appellant's back and remanding that matter for readjudication, there is no final decision as to that muscle injury and it cannot be said at this time that these two muscle injuries have been treated differently. *See Cromer v. Nicholson*, 19 Vet.App. 215, 219 (2005) (indicating there is no basis for deciding an issue that is not supported by a factual predicate).

## III. CONCLUSION

Accordingly, the Board's decision denying the appellant's claim for an increased rating for residuals of an SFW to the back is VACATED and that matter is REMANDED for further proceedings consistent with this opinion; the decision is otherwise AFFIRMED.

GREENE, *Chief Judge*, concurring: I concur with the holdings in this case. I write separately, however, because I would hold additionally that Mr. Tropf's constitutional argument is without merit and should be disposed of accordingly. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr, Inc.*, 473 U.S. 432, 439 (1985). Mr. Tropf argues that treating his arm and back disabilities differently in the rating schedule is a violation of due process; he asserts that he should be awarded a compensable rating for his arm because it is essentially the same injury as his back injury. That argument is without merit because treating a veteran's own injuries differently is not unequal treatment of "*persons* similarly situated." *Cleburne*, *supra* (emphasis added); *Reeves v. West*, 11 Vet.App. 255 (1998); *Clarke v. Brown*, 10 Vet.App. 20 (1997).