Citation Nr: AXXXXXXXX
Decision Date: 10/29/21 Archive Date: 10/29/21

DOCKET NO. 191125-48058
DATE: October 29, 2021

ORDER

Entitlement to a 30 percent rating for residuals of a right thigh gunshot wound affecting Muscle Group XIII is granted.

Entitlement to a separate 30 percent rating for residuals of a right thigh gunshot wound affecting Muscle Group XIV is granted.

FINDINGS OF FACT

1. Resolving the benefit of the doubt in favor of the Veteran, the Veteran's residuals of a right thigh gunshot wound involving Muscle Group XIII is manifested by a moderately severe level of disability throughout the appeal period. 

2. Resolving the benefit of the doubt in favor of the Veteran, the Veteran's residuals of a right thigh gunshot wound involving Muscle Group XIX is manifested by a moderately severe level of disability throughout the appeal period. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to a 30 percent rating, but no higher, for residuals of a right thigh gunshot wound involving Muscle Group XIII have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.73, Diagnostic Code 5313.

2. The criteria for entitlement to a 30 percent rating, but no higher, for residuals of a right thigh gunshot wound involving Muscle Group XIV have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.73, Diagnostic Code 5314.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from June 1967 to April 1970. 

Procedurally, the Veteran filed a non-initial increased rating claim on October 27, 2003. A June 2004 rating decision denied the claim, and the Veteran filed a claim to reopen in September 2004, within the one-year appeal period. A March 2005 rating decision denied the claim, and the Veteran filed a claim to reopen in September 2005, within the one-year appeal period. A July 2006 rating decision denied the claim, and the Veteran filed a timely Notice of Disagreement. The Board of Veterans' Appeals (Board) remanded the claim in August 2011, September 2014, and March 2016. 

In October 2019 the AOJ issued a supplemental statement of the case (SSOC). The Veteran opted the claim into the modernized review system, also known as the Appeals Modernization Act (AMA), by submitting a November 2019 VA Form 10182, Decision Review Request: Board Appeal, identifying the October 2019 SSOC. Therefore, the October 2019 SSOC became the decision on appeal to the Board. In the November 2019 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the October 2019 SSOC. 38 C.F.R. § 20.301.

A July 2020 Board decision denied the claim. The Veteran appealed to the Court of Appeals for Veterans Claims (CAVC), and the July 2020 decision was vacated pursuant to a March 2021 Joint Motion for Partial Remand and remanded back to the Board for adjudication in accordance with its terms. 

The Veteran's service-connected right thigh residuals of a gunshot wound disability is rated as 10 percent disabling under 38 C.F.R. § 4.73, Diagnostic Code 5314.

Diagnostic Code 5314 pertains to a disability of Muscle Group XIV, which is comprised of the anterior thigh group: 1) sartorius, 2) rectus femoris, 3) vastus externus, 4) vastus intermedius, 5) vastus internus, and tensor vaginae femoris. The functions of Muscle Group XIV include: extension of the knee; simultaneous flexion of the hip and flexion of the knee; tension of fascia lata and iliotibial (Maissiat's band) acting with Muscle Group XVII in postural support of the body; and acting with the hamstrings in synchronizing the hip and knee. A slight disability warrants a noncompensable rating. A moderate disability warrants a 10 percent disability rating. A moderately severe disability warrants a 30 percent disability rating. A severe disability warrants a 40 percent rating, the highest rating available under the diagnostic code. 38 C.F.R. § 4.73.

The evidence also shows that Muscle Group XIII (Diagnostic Code 5313) is affected, which is comprised of the posterior thigh group, hamstring complex of 2-joint muscles: 1) biceps femoris, 2) semimembranosus, and 3) semitendinosus. The functions of Muscle Group XIII include: extension of hip and flexion of knee; outward and inward rotation of flexed knee; acting with rectus femoris and sartorius synchronizing simultaneous flexion of hip and knee and extension of hip and knee by belt-over-pully action at knee joint. Similarly, a slight disability warrants a noncompensable rating. A moderate disability warrants a 10 percent disability rating. A moderately severe disability warrants a 30 percent disability rating. A severe disability warrants a 40 percent rating, the highest rating available under the diagnostic code. 38 C.F.R. § 4.73.

Disabilities resulting from muscle injuries are classified as slight, moderate, moderately severe, or severe. 38 C.F.R. § 4.56 (d). The CAVC, citing Robertson v. Brown, 5 Vet. App. 70 (1993), has held that 38 C.F.R. § 4.56 (d) is essentially a totality-of-the-circumstances test and that no single factor is per se controlling. Tropf v. Nicholson, 20 Vet. App. 317 (2006).

A "moderate" muscle disability consists of a through and through or deep penetrating wound of short track from a single bullet, small shell or shrapnel fragment, without the explosive effect of a high velocity missile, residuals of debridement, or prolonged infection. In such cases, there will be a service department record or other evidence of in-service treatment for the wound and a record of consistent complaint of one or more of the cardinal signs and symptoms of muscle disability, particularly a lowered threshold of fatigue after average use, affecting the particular functions controlled by the injured muscles. Objective findings typically include entrance and (if present) exit scars, small or linear, indicating a short track of the missile through muscle tissue; some loss of deep fascia or muscle substance or impairment of muscle tonus and loss of power or a lowered threshold of fatigue when compared to the sound side. 38 C.F.R. § 4.56 (d)(2).

A "moderately severe" disability of the muscles is shown by a through and through or deep penetrating wound by a small high velocity missile or a large low velocity missile, with debridement, prolonged infection, or sloughing of soft parts, and intermuscular scarring. History and complaints of this injury typically include a record of hospitalization for a prolonged period for treatment of a wound, a record of consistent complaint of cardinal signs and symptoms of muscle disability, and, if present, evidence of an inability to keep up with work requirements. Objective findings of a moderately severe muscle wound are entrance and (if present) exit scars indicating the track of the missile through important muscle groups; indications on palpation of moderate loss of deep fascia, muscle substance, or normal firm resistance of muscles compared with the sound side; and tests of strength and endurance compared with the sound side demonstrating positive evidence of impairment. 38 C.F.R. § 4.56 (d)(3).

A "severe" muscle disability contemplates: injury characterized by a through-and-through or deep penetrating wound due to a high velocity missile, or large or multiple low velocity missiles, or with shattering bone fracture or open comminuted fracture with extensive debridement, prolonged infection, or sloughing of soft parts, intermuscular binding, and scarring; a service treatment record or other evidence showing hospitalization for a prolonged period for treatment of the wound; a record of consistent complaint of cardinal signs and symptoms of muscle disability, worse than those shown for moderately severe muscle injuries; or, if present, evidence of inability to keep up with work requirements. Objectively, a severe muscle disability consists of: ragged, depressed, and adherent scars indicating wide damage to Muscle Groups in the missile track; palpation shows loss of deep fascia or muscle substance, or soft flabby muscles in the wound area; muscles swell and harden abnormally in contraction; or, tests of strength, endurance, or coordinated movements indicate severe impairment of function when compared with the uninjured side. 38 C.F.R. § 4.56 (d)(4).

If present, the following are also signs of a severe muscle disability: (a) x-ray evidence of minute, multiple scattered foreign bodies indicating intermuscular trauma and explosive effect of the missile; (b) adhesion of scar to one of the long bones, scapula, pelvic bones, sacrum, or vertebrae, with epithelial sealing over the bone rather than true skin covering in an area where bone is normally protected by muscle; (c) diminished muscle excitability to pulsed electrical current in electrodiagnostic tests; (d) visible or measurable atrophy; (e) adaptive contraction of an opposing group of muscles; (f) atrophy of Muscle Groups not in the track of the missile, particularly of the trapezius and serratus in wounds of the shoulder girdle; and, (g) induration or atrophy of an entire muscle following simple piercing by a projectile. Id.

For VA rating purposes, the cardinal signs and symptoms of a muscle disability are loss of power, weakness, lower threshold of fatigue, fatigue-pain, impairment of coordination, and uncertainty of movement. 38 C.F.R. § 4.56 (c).

The principles of combined ratings for muscle injuries provides that a muscle injury rating will not be combined with a peripheral nerve paralysis rating of the same body part, unless the injuries affect entirely different functions. 38 C.F.R. § 4.55(a). For rating purposes, the skeletal muscles of the body are divided into 23 muscle groups in 5 anatomical regions: 6 muscle groups for the shoulder girdle and arm (diagnostic codes 5301 through 5306); 3 muscle groups for the forearm and hand (diagnostic codes 5307 through 5309); 3 muscle groups for the foot and leg (diagnostic codes 5310 through 5312); 6 muscle groups for the pelvic girdle and thigh (diagnostic codes 5313 through 5318); and 5 muscle groups for the torso and neck (diagnostic codes 5319 through 5323). 38 C.F.R. § 4.55 (b).

For compensable muscle group injuries which are in the same anatomical region but do not act on the same joint, the evaluation for the most severely injured muscle group will be increased by one level and used as the combined evaluation for the affected muscle groups. 38 C.F.R. § 4.55 (e).

For muscle group injuries in different anatomical regions which do not act upon ankylosed joints, each muscle group injury shall be separately rated, and the ratings combined under the provisions of 38 C.F.R. § 4.25. 38 C.F.R. § 4.55 (f).

A through-and-through injury with muscle damage shall be evaluated as no less than a moderate injury for each group of muscles damaged. 38 C.F.R. § 4.56 (b). In situations wherein there are two or more through and through wounds, the CAVC has clearly held that such wounds are to be separately rated. See Jones v. Principi, 18 Vet. App. 248 (2008).

Turning to the evidence, the service records show the Veteran suffered a through and through gunshot wound to the right thigh in 1968 while serving in Vietnam. He was hospitalized for approximately three months for debridement and treatment. He had entrance and exit wounds measuring 3 by 6 centimeters. The hospital narrative summary reflects no neurovascular deficit and completely healed wounds upon discharge.

A November 1971 radiographic report shows no evidence of foreign metallic bodies, fractures, bone, or joint disease. A contemporaneous record reflects complaints of pain, giving way, and numbness in his right leg. 

Several VA examinations were conducted throughout the appeal period. In a January 2004 examination report, the Veteran reported that his right thigh aches and is more acutely painful at times. He experienced notable swelling of the entire right leg, particularly with prolonged walking. The Veteran could walk on a level surface without difficulty, but he had considerable difficulty walking up stairs because he felt that his leg was weak and would give way. Physical examination of the right thigh showed a well-healed wound with some loss of muscle. There was no tenderness or swelling, and the neurological examination of the right leg was within normal limits. 

A November 2004 examination report states that the bullet entered the lateral aspect of the mid-thigh and exited posteriorly. The Veteran had intermittent pain in the thigh. Physical examination of the right thigh showed no atrophy of the thigh muscles. The scars were hyperpigmented, depressed, mobile, and tender, but muscle strength was normal.

In a March 2008 examination report, the Veteran complained of numbness and tingling in the right buttock, thigh, and foot. He had pain in the wound area and in the knees. The examiner indicated that the muscles involved were the right quadriceps and hamstrings, and that there was damage to the sciatic nerve. She listed current symptoms of pain, weakness, and numbness. The injured muscle groups were 13 (semimembranous, semitendinosus) and group 14 (vastus externus), and she assigned a muscle strength level of 4 out of 5 with no tissue loss. The scars were depressed and adherent. The examiner indicated that there was initial infection before healing. She further noted that the Veteran had to quit his previous employment as a photographer due to his leg problems and difficulty ambulating. The examiner opined that the muscle and nerve damage from the wound caused decreased mobility, decreased strength, and pain. 

In an October 2010 examination report, the examiner listed the right quadriceps and hamstrings as the muscles involved; specifically, Muscle Group 13 (semimembranous) and Muscle Group 14 (vastus externus). The examiner listed a muscle strength level of 4 out of 5 with tissue loss to both muscle groups. The examiner indicated that the wound was initially infected before healing. There was no associated bone, nerve, vascular, or tendon injuries. The current symptoms were pain, increased fatigability, and weakness. The overall function was "almost normal," and the wound had healed well. The Veteran had worked full-time as a photo engraver for more than 20 years with no time lost due to residuals of the gunshot wound. However, the examiner did note that the Veteran was assigned different duties that now involves less walking. 

In an August 2011 examination report, the Veteran endorsed having a limp ever since the injury due to pain, and having numbness and stiffness along the posterolateral aspect of the thigh. He also noticed weakness of the leg, which had worsened over the years. The report indicates that, when asked, "it appears that the issue is that he favors the leg due to pain and not that he has muscle weakness." He also reported swelling in the upper thigh, though he admitted that he had pain at different places at that point in time, that could be a factor. The listed muscles involved were Group 13 (semitendinosus) and Group 14 (rectus femoris). There was full muscle strength (5 out of 5) and no tissue loss, though the examiner qualified that there was only tissue loss at the actual entrance and exit sites where the scars were depressed and slightly tender. While there was a difference in girth between both thighs, the examiner found no edema and opined that the difference was either insignificant or represented muscle atrophy on the left due to a recent knee surgery. The examiner indicated there was no initial infection before healing. There was no associated bone, nerve, vascular, or tendon injuries. The current symptoms were pain, increased fatigability, weakness, and numbness.

The examiner further noted that the Veteran's muscle strength was 5 out of 5 everywhere in both legs. While he walked with a cane and a limp, it was not clear how much of his limp was due to his right thigh and how much was due to his left side as he just had knee surgery three months prior and has degenerative arthritis in the right knee. On sensation testing, the Veteran stated he felt decreased sensation to both light touch and pinprick over a large area extending from the greater trochanter to the knee and extending over the thigh. He had tenderness to palpation over the wound scars, but not in any other places on the right thigh. There was no evidence of swelling. There was no evidence of any muscle atrophy other than the actual damaged area under the wound scar. 

The examiner noted that the Veteran had been assigned different duties from a photographer to an engraver due to the pain in his thigh and knees. The examiner stated it was hard to separate out the effect of the thigh pain from his knee pain because he has significant degenerative arthritis. Although the Veteran had a gunshot wound, the examiner found he had good function in the leg, despite severe degenerative disease of the right knee. The examiner opined that the pain and numbness he described are not likely due directly to his old injury other than local pain in the wound area itself. His decreased sensation over a large area of the posterior and anterior thigh were not consistent with an anatomic nerve distribution and were not explained by the gunshot wound. There was no evidence for any calcification of scar tissue in the wound area that might explain his increased pain. His level of impairment due to the gunshot wound was mild according to the findings on physical examination, and most of the present impairment was related to his severe degenerative disease of the knees as well as possible damage or entrapment of the lateral cutaneous femoral nerve that was not present in the 2004 examination. The examiner found no increased incoordination of movement in any of the muscle groups affected by his gunshot wound. 

In an addendum opinion, the examiner opined that the gunshot wound and its residuals did not have a significant impact on the Veteran's ability to work. At the time of examination, he had worked full-time for many years and had in recent years changed to a more sedentary job due to his degenerative knee disease. He had continued to work, taking time off for knee and prostrate surgeries. He stated he had played sports in the October 2010 examination but had cut back due to knee pain in recent years. The examiner concluded that despite all the symptoms he had in recent years, he was still working when not taking time off for surgery and rehabilitation. 

Further, his August 2011 history and physical examination did not find convincing evidence that his gunshot wound had worsened or was the source of the increased pain and numbness he complained of in his right leg. He had severe right knee degenerative joint disease as well as back pain and problems with his left leg, which affected his ambulation and cause pain, though he was still quite ambulatory. She concluded there was no evidence that his old healed right thigh muscle injury was contributing significantly to his overall disability or lessening his ability to work in any capacity.

In an October 2014 VA examination report, the examiner noted that the gunshot wound to the right thigh was healed with residual scars. There was no residual muscle pathology or injury and no active muscle pathology found. Notably, the examiner disagreed with the March 2008 VA examiner's finding of sciatic nerve damage because it was inconsistent with the notes from the original injury, recent notes from neurology, and the examiner's own physical examination findings. Regarding the original injury, the records state there was no neurovascular deficit, and no mention of any nerve injury or treatment for such. Additionally, the Veteran is followed by neurology for his lumbar degenerative joint disease, and no records mentioned sciatic nerve damage related to the gunshot wound. The examiner also noted neurology findings of 5 out of 5 bilateral lower extremity muscle strength the day prior, which was confirmed at the time of examination. There was no decreased sensation reported by the Veteran at the examination, though he reported residual intermittent non-radiating pain in the anterolateral thigh. The pain felt like being stuck with a sharp object and occurred 2 to 3 times monthly usually lasting less than a day. There was no neuromuscular deficit on examination. He had indented gunshot wound scars without any muscle loss. The examiner also noted reports of chronic intermittent pain in the left thigh, bilateral calves, ankle, and feet. Thus, the examiner was unable to attribute his infrequent right thigh pain directly to his injury. 

The examiner listed Muscle Group XIII (posterior thigh/hamstring muscles: biceps femoris, semimembranosus, semitendinosus) as the only muscle group involved. Entrance and exit scars indicating track of missile through one or more muscle groups was also indicated. The examiner indicated no known fascial defects associated with the muscle injury, nor did the injury affect muscle substance or function. The examiner also indicated that the Veteran did not have any cardinal signs or symptoms of muscle disabilities. The use of a cane was noted but attributed the lumbar spine degenerative joint disease. The examiner opined that the Veteran's muscle injury did not affect his ability to work. 

During the Veteran's October 2014 VA examination for his scars, he reported a tingling sensation and numbness over the scar area. In the March 2016 decision, the Board noted these complaints and found that the VA examiner did not adequately address these neurological complaints, necessitating a remand for another examination. 

The most recent examination was conducted in July 2016. A peripheral nerves examination reflected a diagnosis of right meralgia paresthetica, for which the Veteran is now separately service connected. In the examination, the Veteran was found to have severe right lower extremity intermittent pain with moderate numbness. There was no muscle atrophy. Sensory testing showed decreased sensation in the right anterior thigh. The Veteran had an antalgic gait that was attributable to his bilateral knee replacements. 

Throughout the appeal period, the Veteran has endorsed symptomatology related to his gunshot wound. In November 2009, he provided a statement that his right leg hurt severely. In January 2011, he provided a statement that he experiences pain, and his thigh stays sore and weak. He contended he cannot stand for long periods of time and cannot walk long without stopping for rest. The Veteran testified before the Board in June 2011. He complained of weakness and use of a cane. He stated that he stops to sit down and rest when walking and uses a cane because he feels like he is going to fall. He has daily pain. He later testified that while he was issued a cane for his left knee after his surgery, he experienced pain and weakness in his thigh prior to the left knee surgery. He also stated that when he stands in line for a long time his whole leg will go numb. He testified that he has swelling, and he believes his right leg is weaker than his left leg. The Veteran provided another statement in August 2013 explaining that his right leg is painful, sore, and numb.

The September 2015 post-remand brief states that the Veteran limps due to pain from the residuals of the gunshot wound. The right leg is weaker than the left, and swelling occurs when walking. The right thigh muscle was injured, destroyed, or traversed.

The VA treatment records and private treatment records from Kaiser Permanente reflect many complaints of chronic pain, swelling, and cramping in the lower extremities. However, the majority of these complaints are directed at both extremities including the bilateral thighs, knees, ankles, and feet rather than the Veteran's right thigh or gunshot wound in particular. Many of the records attribute the Veteran's symptoms to other disabilities such as lumbar spine and bilateral knee degenerative joint disease. While there are a handful of records reflecting complaints chronic pain or numbness since the gunshot injury, there are no other pertinent findings revealed by the treatment records. 

As an initial matter, the Board finds that residuals of a right thigh gunshot wound injury involve injury to Muscle Groups XIII and XIV, which are in the same anatomical region (i.e., pelvic girdle and thigh) and act upon the same joint (i.e., both muscle groups serve to flex and extend the knee joint); therefore, the Veteran is entitled to separate ratings for both muscle groups. 

As stated above, when there is a through-and-through muscle injury, as is the case here, the disability rating must be rated as no less than a moderate injury for each group of muscles damaged. 38 C.F.R. § 4.56 (b).

Regarding what level of disability to assign the muscle injuries, the evidence shows a through and through wound by a small high velocity missile with debridement. The record does not explicitly describe residuals associated with debridement. The VA examinations differ on whether there was infection prior to healing, but to the extent there was infection involved, the service records do not explicitly reflect a prolonged infection. However, there was evidence of hospitalization for a prolonged period for treatment. There is also evidence of an inability to keep up with work requirements. While the evidence shows the Veteran was employed full-time for several decades, it is noted that due in part to his injury, he was unable to keep up with his work requirements as a photographer, which led to him switching duties and becoming an engraver. 

The record also shows consistent complaints of cardinal signs and symptoms of a muscle disability. The Veteran has consistently reported fatigue, pain, and weakness in his right thigh. 

The VA examination reports contain inconsistent objective findings, though all reports show entrance and exit scars. The January 2004 examination report reflects some muscle loss, but there is no other evidence of loss of deep fascia or muscle substance. The March 2008 and October 2010 examinations revealed tests of strength demonstrating positive evidence of impairment (4 out of 5), whereas the August 2011 and October 2014 examinations revealed tests of strength demonstrating no impairment (5 out of 5). When there is both positive and negative evidence, the VA is required to resolve all doubt in the Veteran's favor. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 C.F.R. § 4.3. Thus, resolving the benefit of the doubt in favor of the Veteran, the Board finds that he exhibits objective findings of strength impairment. 

Upon careful consideration of the evidence, the Board finds that the Veteran's injuries to both Muscle Groups (XIII and XIV) are moderately severe. As shown above, the records show prolonged hospitalization for debridement and treatment, consistent complaints of cardinal signs and symptoms of a muscle disability, evidence of an inability to keep up with work requirements, and objective findings of impairment of strength. 

The Veteran's disability picture is most accurately described as moderately severe and does not manifest as severe. There is no evidence of a shattering bone fracture or open comminuted fracture with extensive debridement. Objectively, there is no evidence of ragged, depressed, and adherent scars that indicate wide damage to muscle groups in the missile track, nor is there palpation showing loss of deep fascia or muscle substance, soft flabby muscles in the wound area, muscles that swell or harden abnormally in contraction, or tests of strength, endurance, or coordinated movements indicating severe impairment. Finally, there is no evidence of additional signs of severe muscle disability listed under § 4.56 (d)(4)(iii)(a)-(g). 

To summarize, the Veteran is entitled to a 30 percent rating, but no higher, for a moderately severe injury to Muscle Group XIII under Diagnostic Code 5313, and a 30 percent rating, but no higher, for a moderately severe injury to Muscle Group XIV under Diagnostic Code 5314.

 

L. M. BARNARD

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board A. Carroll, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.