Citation Nr: 1132151 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 09-23 020 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to an increased rating for service-connected left shoulder degenerative changes with calcific tendonitis, currently evaluated as 20 percent disabling.

2. Entitlement to a total rating based on unemployability due to service-connected disability (TDIU). 


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

T. Stephen Eckerman, Counsel


INTRODUCTION

The Veteran had active military service from August 1950 to July 1954.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan, which denied the Veteran's claim for an increased rating for service-connected left shoulder degenerative changes with calcific tendonitis, evaluated as 20 percent disabling. In July and December of 2010, the Board remanded the case for additional development. 

The issue of entitlement to TDIU is addressed in the REMAND that follows the decision below. 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 2002). 


FINDING OF FACT

The Veteran's service-connected left shoulder degenerative changes with calcific tendonitis has been shown to be productive of complaints of pain, and some limitation of motion and functional loss due to pain and weakness, but not ankylosis of the scapulohumeral articulation, a limitation of his left arm to 25 degrees from his side, or a fibrous union at the humerus. 


CONCLUSION OF LAW

The criteria for a rating in excess of 20 percent for the Veteran's service-connected left shoulder degenerative changes with calcific tendonitis have not been met. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107 (West 2002 & Supp. 2005); 38 C.F.R. §§ 3.102, 3.159, 3.321(b), 4.7, .440, 4.45, 4.71a, Diagnostic Codes 5200, 5201, 5202 (2010). 

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Increased Rating

The Veteran asserts that he is entitled to an increased rating for his service-connected left shoulder degenerative changes with calcific tendonitis. 

The Board first notes that in August 2011, the Veteran submitted a VA progress note, dated in May 2011. Although this report was received after the (most recent) June 2011 supplemental statement of the case, and although it is not accompanied by a waiver of RO review, this report notes a complaint of left shoulder pain, but it does not contain any relevant evidence, and it is not material to the basis for the Board's decision. Therefore, this evidence is not "pertinent" as defined at 38 C.F.R. § 20.1304(c) (2010) to the issue before the Board, and a remand for RO consideration is not required. 

In November 1999, the RO granted service connection for left shoulder degenerative changes with calcific tendonitis, evaluated as 20 percent disabling. There was no appeal, and the RO's decision became final. See 38 U.S.C.A. § 7105(c) (West 2002 & Supp. 2009). 

In February 2007, the Veteran filed a claim for an increased rating. In August 2007, the RO denied the claim. After additional evidence was obtained, the RO again denied the claim in October 2007. The Veteran specifically appealed the RO's October 2007 decision. 

As for the history of the Veteran's left shoulder disability, see 38 C.F.R. § 4.1 (2010), the Veteran's service treatment reports include a separation examination report, dated in June 1954, which notes that he reported that he had left shoulder arthritis, and a history of a dislocated left shoulder five years' before while playing football, and again from an injury while on flight duty. The post-service medical evidence includes a September 1998 VA examination report which notes degenerative joint disease of the left shoulder with pain and a limitation of use. X-rays were noted to show no evidence of fracture or dislocation, but soft-tissue calcification at the femoral head and in the subcutaneous region, with minor arthritic changes at the acromioclavicular joint. The impression was soft-tissue calcification in the deltoid areas, most likely injected granuloma and otherwise essentially negative exam of the left shoulder, minor arthritic changes in the acromioclavicular joint. Thereafter, the Veteran is shown to have received treatment for complaints of joint pain that included the left shoulder, with notations of a limitation of motion. 

Disability evaluations are determined by comparing the veteran's symptomatology with the criteria set forth in the VA's Schedule for Ratings Disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. § Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

The RO has indicated that it evaluated the Veteran's shoulder disability under Diagnostic Codes (DC's) 5010-5201. See 38 C.F.R. § 4.27 (2010) (hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen). This hyphenated diagnostic code may be read to indicate that traumatic arthritis is the service-connected disorder, and it is rated as if the residual condition is limitation of motion of the arm, under DC 5201. However, the U.S. Court of Appeals for Veterans Claims held that hyphenated codes are only appropriate for diseases, and that they are inappropriate for injuries. Tropf v. Nicholson, 20 Vet. App. 317 (2006). Under the circumstances in this case, the use of the hyphenated code did not result in any prejudice to the Veteran. The Board has analyzed the claim under the appropriate diagnostic codes, as noted below. 

The Board notes that the medical evidence shows that the Veteran is right-handed. See e.g., VA examination report, dated in September 2010. 

The Board must determine whether an increased rating is warranted under any potentially applicable diagnostic code. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Therefore, the following diagnostic codes are relevant:

Under DC 5200, a 30 percent evaluation is warranted for: Scapulohumeral articulation, ankylosis of: Intermediate between favorable and unfavorable, minor upper extremity. 38 C.F.R. § 4.71. 

Under DC 5201, a 30 percent rating is warranted for: Arm, limitation of motion of: To 25 degrees from side, for the minor upper extremity. 38 C.F.R. § 4.71.

Under DC 5202, a 40 percent evaluation is warranted for: Humerus, other impairment of: Fibrous union of, for the minor upper extremity. 38 C.F.R. § 4.71.

The standardized description of joint measurements is provided in Plate I under 38 C.F.R. § 4.71. These descriptions indicate that normal forward flexion of the shoulder is from 0 to 180 degrees, normal abduction of the shoulder is from 0 to 180 degrees, normal external rotation is from 0 to 90 degrees, and normal internal rotation is from 0 to 90 degrees. 

The relevant evidence is summarized as follows: 

A report from a physician at the International Orthopedic & Sports Medicine Center (IOSMC), dated in August 2006, states that the Veteran had left shoulder abduction to 80 degrees, with "limited internal and external range of motion" (no specific degrees of motion were provided). See also IOSMC statements, dated in May 2008, June 2009, and August 2010 (similar findings, with no specific degrees of motion provided). 

A VA examination report, dated in May 2007, shows that the Veteran's left shoulder had forward flexion to 100 degrees, abduction to 96 degrees, external rotation to 30 degrees, and internal rotation to 30 degrees. 

A VA examination report, dated in September 2010, shows that the Veteran's left shoulder had forward flexion to 98 degrees, abduction to 70 degrees, external rotation to 30 degrees, and internal rotation to 30 degrees. 

A VA examination report, dated in February 2011, shows that the Veteran's left shoulder had forward flexion to 90 degrees, abduction to 70 degrees, external rotation to 30 degrees, and internal rotation to 30 degrees. 

The Board finds that the criteria for a rating in excess of 20 percent under DC 5201 have not been met. The aforementioned ranges of motion for the left shoulder do not show that the Veteran has a limitation of his left arm to 25 degrees from his side, and there is no competent evidence to show limitation of his left arm to 25 degrees from his side. Accordingly, the Board finds that the preponderance of the evidence is against the claim, and that the criteria for a rating in excess of 20 percent under DC 5201 have not been met. 

As to an increased rating under another diagnostic code, the Board notes that there is no competent evidence to show a fibrous union at the humerus, or ankylosis of the scapulohumeral articulation. Moreover, in the absence of ankylosis, the Board may not rate his service-connected disability as ankylosis. Johnston v. Brown, 10 Vet. App. 80 (1997). Consequently, the criteria for a rating in excess of 20 percent under DC's 5200 and 5202 are not met. 

Finally, the Board has also considered the functional impairment which can be attributed to pain and weakness. See generally DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. §§ 4.40, 4.45; see also VAGCOPPREC 9-98, 63 Fed. Reg. 56,704 (1998). 

Overall, the medical evidence shows that the Veteran has received a number of treatments for left shoulder pain. 

The IOSMC reports note that the Veteran has "limited internal and external range of motion" with numerous steroid injections without any relief of pain and discomfort. 

The May 2007 VA examination report shows that the Veteran reported having throbbing left shoulder pain, with stiffness and weakness, and that he had pain on repetitive lifting, or the lifting of 15 pounds or more. He stated that he took two to three Vicodin per day. On examination, he reported pain and weakness on motion. The relevant diagnosis was left shoulder degenerative joint disease with limited range of motion. The examiner stated, "In the absence of further objective evidence, I am unable to determine additional functional loss without resorting to speculation." 

The September 2010 VA examination report shows that the Veteran complained of giving way, instability, pain, stiffness, incoordination, decreased speed of joint motion, tingling in his fingers, tenderness, weekly locking, and moderate flare-ups every two to three weeks. The report notes that there is no history of recurrent shoulder dislocations, and that there was crepitus, tenderness, pain at rest, and guarding of movement. There was pain on motion, and pain following repetitive motion, however, additional limitation of motion after repetitive motion could not be tested due to complaints of pain. An X-ray was noted to show a slightly proximal subluxation of the humerus related to the glenoid, which may be due to a rotator cuff tear, and a calcific density projecting over the humeral neck that was possibly an injection granuloma. The report notes muscle atrophies of the hands, left greater than right, and that the left upper extremity was weaker than the right. The report notes that the Veteran was retired, and that there were effects on the usual daily activities. Specifically, there were no effects on feeding, mild effects on grooming, toileting, bathing, and shopping, moderate effects on driving, dressing, traveling, recreation, sports and exercise, and severe effects on chores. The examiner stated that it was not at least as likely as not that the Veteran's left hand sensory and motor deficit, and his left biceps and triceps muscle atrophy, were related to his service-connected left shoulder condition. The examiner indicated that the Veteran's C-file and medical records had been reviewed. 

The February 2011 VA examination report notes a progressively worse course since onset, with use of medication (Hydrocodone) and a fair response to treatment. The Veteran complained of left shoulder pain, stiffness, weakness, decreased speed of joint motion, a "crunching sound," tingling and numbness of his left fingers, a limited range of motion, tenderness, and moderate daily flare-ups lasting a few minutes. His symptoms were precipitated by cold weather, and by lifting a book on a shelf at shoulder level. The examiner stated that an opinion could not be provided as to additional limitation of motion on flare-up, as this had not been witnessed. The report notes the following: there were no incapacitating episodes of arthritis. There was tenderness, pain at rest, weakness, and guarding of movement. There was objective evidence of pain following repetitive motion. There were no additional limitations after three repetitions of range of motion. There was no joint ankylosis. An X-ray report contains an impression noting moderate degenerative joint disease, and soft tissue calcification. The Veteran was retired since 1985, based on age or duration of work. The report notes that there were effects on the usual daily activities. Specifically, there were no effects on driving, toileting, traveling, recreation, and shopping, mild effects on grooming, dressing, bathing, feeding, and chores, and moderate effects on exercise, and prevention of participation in sports. The examiner indicated that the Veteran's C-file and medical records had been reviewed. 

In this case, a rating in excess of 20 percent is not warranted on the basis of additional functional loss due to pain and weakness. The medical evidence established the presence of left shoulder has additional functional loss due to pain, weakness, excess fatigability, and flare-ups. However, when the ranges of motion in the Veteran's left shoulder are considered together with the evidence (or lack thereof) of such symptoms as weakness, laxity, incoordination, atrophy, or other impairment, the Board finds that the record does not show that the Veteran's functional loss due to his service-connected left shoulder disability impairs him to such a degree that he has the equivalent of the criteria as required for a rating in excess of 20 percent for the left shoulder. In this regard, there are no findings of left shoulder atrophy, or incoordination, and the demonstrated ranges of motion are significantly in excess of the limitation of motion that is required for a rating in excess of 20 percent. See DC 5201. In addition, the February 2011 VA examination report notes that there were no additional limitations after three repetitions of range of motion. 

The Board has also considered the potential application of other various provisions, including 38 C.F.R. § 3.321(b)(1), for exceptional cases where scheduler evaluations are found to be inadequate. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Ordinarily, the VA Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). According to the regulations, an extraschedular disability rating is warranted upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular scheduler standards. See 38 C.F.R. § 3.321(b)(1) (2010); Fanning v. Brown, 4 Vet. App. 225, 229 (1993). 

In Thun v. Peake, 22 Vet. App. 111, 115-116 (2008), the Court set forth a three-step inquiry for determining whether a Veteran is entitled to an extraschedular rating. First, as a threshold issue, the Board must determine whether the Veteran's disability picture is contemplated by the rating schedule. If so, the rating schedule is adequate and an extraschedular referral is not necessary. If, however, the Veteran's disability level and symptomatology are not contemplated by the rating schedule, the Board must turn to the second step of the inquiry, that is, whether the Veteran's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." These include marked interference with employment and frequent periods of hospitalization. Third, if the first and second steps are met, then the case must be referred to the VA Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating. 

The Board finds that the evidence of record does not reflect that the Veteran's disability picture is so exceptional as to not be contemplated by the rating schedule. The Veteran has stated that he has been retired since 1985. There is no history of surgery or hospitalization for his left shoulder. There is no unusual clinical picture presented, nor is there any other factor which takes the disability outside the usual rating criteria. The rating criteria for the Veteran's left shoulder contemplate his symptoms, and there are no symptoms left uncompensated or unaccounted for by the assignment of his schedular rating. As such, the threshold issue under Thun is not met and any further consideration of governing norms or referral to the appropriate VA officials for extraschedular consideration is not necessary. 

In short, the evidence does not support the proposition that the Veteran's service-connected disability presents such an exceptional or unusual disability picture as to render impractical the application of the regular scheduler standards and to warrant the assignment of an extraschedular rating under 38 C.F.R. § 3.321(b)(1). Thus, referral of this issue to the appropriate VA officials for consideration of an extraschedular evaluation is not warranted. 

In deciding the Veteran's claim, the Board has considered the determinations in Fenderson v. West, 12 Vet. App. 119, 126 (1999) and Hart v. Mansfield, 21 Vet. App. 505 (2007), and whether the Veteran is entitled to an increased rating for separate periods based on the facts found during the appeal period. The Board does not find evidence that the Veteran's rating should be increased for any separate period based on the facts found during the whole appeal period. The evidence of record supports the conclusion that the Veteran is not entitled to additional increased compensation during any time within the appeal period. The Board therefore finds that the evidence is insufficient to show that the Veteran had a worsening of the disability in issue, such that an increased rating is warranted.

In reaching this decision, the Board has considered the doctrine of reasonable doubt; however, as is stated above, the preponderance of the evidence is against the appellant's claim, and the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


II. The Veterans Claims Assistance Act of 2000

The Board is required to ensure that the VA's "duty to notify" and "duty to assist" obligations have been satisfied. See 38 U.S.C.A. §§ 5103, 5103A (West 2002); 38 C.F.R. § 3.159 (2010). The notification obligation in this case was accomplished by way of a letter from the RO to the Veteran dated in March 2007. Quartuccio v. Principi, 16 Vet. App. 183 (2002); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F. 3d 1328 (Fed. Cir. 2006); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The RO also provided assistance to the appellant as required under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c), as indicated under the facts and circumstances in this case. It appears that all known and available service treatment reports, and post-service records relevant to the issue on appeal have been obtained and are associated with the Veteran's claims files. The RO has obtained the Veteran's VA and non-VA medical records. The Veteran has been afforded three examinations. 

Based on the foregoing, the Board finds that the Veteran has not been prejudiced by a failure of VA in its duty to assist, and that any violation of the duty to assist could be no more than harmless error. See Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004).


ORDER

The appeal is denied.


REMAND

Once a veteran submits evidence of a medical disability, makes a claim for the highest rating possible, and submits evidence of unemployability, an informal claim for a total disability rating for compensation purposes based on individual unemployability (TDIU) is raised. Roberson v. Principi, 251 F.3d 1378, 1384 (Fed. Cir. 2001); 38 C.F.R. 3.155 (2003). 

In this case, in addition to the Veteran's left shoulder disability, service connection is in effect for a left hip disability. The claims files include several reports from IOSMC which state that the Veteran is receiving treatment for left hip and left shoulder symptoms, and that he is "disabled on a permanent basis." Therefore, there are medical opinions of record that are competent evidence of unemployability due to service-connected symptoms. Therefore, a TDIU claim has been raised. Id. 

In Rice v. Shinseki, 22 Vet. App. 447, 453 (2009) (per curiam) the Court stated that when the issue of entitlement to a TDIU rating for a particular service-connected disability or disabilities is raised in connection with a claim for an increased rating for such disability or disabilities, the Board has jurisdiction to consider that issue. The Court indicated that if the Board determines that further action by the RO is necessary with respect to the issue, the Board should remand that issue. 

Here, the RO has not yet adjudicated a claim for TDIU, nor has the Veteran been afforded VCAA notice.

Accordingly, the case is REMANDED for the following action:

1. Send the Veteran a VCAA notice letter with respect to the issue of entitlement to TDIU.

2. Develop and adjudicate the issue of entitlement to TDIU.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court 
of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2007).

____________________________________________
F. JUDGE FLOWERS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs